# Greenmont Lumber Corp. v. Joseph J. Berger, et al.

[574 A.2d 153]

No. 87-009

Present: Allen, C.J., Peck and Dooley, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed March 16, 1990

*David C. Drew* and *Anne C. Moore*, Law Clerk (On the Brief), Lyndon Center, for Plaintiff-Appellant.

*Seaver Associates, Inc.*, Burlington, for Defendants-Appellees.

**Allen, C.J.** Plaintiff appeals from a judgment of the Chittenden Superior Court declaring that defendants have ownership of a disputed parcel of land superior to that of plaintiff and ordering dismissal of plaintiff's cause of action. We affirm.

The dispute concerns certain parcels of remote and mountainous land on the north side of the Winooski River in Bolton, known as "river lots" and "mountain lots" which are north of, but not contiguous to, the river lots. Between the river and mountain lots is territory which, according to an 1800 survey on file in the Bolton land records, was land referred to as undivided. While not central to the disposition of the case, a brief description of the relevant properties follows. The trial court found that plaintiff owns and has record title to a portion of the undivided land, bounded on the north by mountain lot 173 and on the south by river lots 8 and 9 "and on the west by an extension of the westerly line of lot 8." The court also found that defendants own and have record title to river lots 5, 6, and 7, "including a portion of the undivided land." River lot 7 is adjacent to and west of river lot 8, and its northeast corner touches the southwest corner of plaintiff's property. River lot 6 is adjacent to and west of river lot 7. North of river lot 6, within the once-undivided land, is a lot called the "school lot," and between the school lot and the westerly boundary of plaintiff's property is another parcel formerly within the undivided land, called the "Lane lot." The Lane lot is bordered on the north by mountain lot 172, which is contiguous to and west of mountain lot 173.

The subject of plaintiff's action is that part of the originally undivided land located west of plaintiff's property, south of the Lane lot, and north of the original northerly lines of lots 6 and 7, as depicted on the 1800 survey. The trial court's central finding concerning plaintiff's record title stated:

12. Based on the deeds in plaintiff's chain of title, the court finds that the westerly boundary of plaintiff's land is a line forming an extension of the westerly boundary of lot 8, running from the northwest corner of lot 8 northerly to the south boundary of lot 173.

In later findings, the court confirmed the same westerly boundary of plaintiff's land "[b]ased on the monumentation on the ground, in the form of old fence lines, blazes on trees, and patterns of timber growth" and that the immediate predecessors to plaintiff in 1949 "acquiesced in their westerly boundary being an extension of the westerly boundary of lot 8." Still later

findings addressed the boundary between the school lot and river lot 6 and the boundary between the Lane lot and river lot 7. The court found that "[a]lthough there was originally undivided land north of lots 6' and 7, this land has been absorbed into lots 6, 7, and the Lane lot, and there is presently no undivided or unclaimed land in that area." The court also found that defendants had paid real estate taxes on the disputed land for at least 19 years, and that plaintiff had never paid taxes on the property. Plaintiff had blazed that portion of the disputed land north of lot 7 in 1976; the balance of the disputed land was never blazed.

The court concluded that plaintiff had no record title to the disputed land and could not prevail in a claim to a possessory right based solely on "[b]lazing trees in 1976 and filing a map in the Bolton Land Records in 1982." The court entered judgment in favor of defendants "declaring they have ownership of the land in dispute superior to that of plaintiff." The present appeal followed.

Plaintiff's argument on appeal rests principally on the weakness of defendants' claim, which was based on adverse possession or acquiescence, to the once-undivided property north of river lots 6 and 7.* Plaintiff adds that in any case defendants' rights under theories of adverse possession or acquiescence at most apply to the claims of third parties, not to those of plaintiff.

However, plaintiff fails to identify any basis for its own claim and specifically fails to address Finding 12, which rejects that claim "[b]ased on the deeds in plaintiff's chain of title." Plaintiff brought this action and, therefore, bore the initial burden of establishing its claim under some theory recognized as

---

* Plaintiff also contends that the trial court was improperly constituted and therefore lacked jurisdiction. On defendants' motion we remanded this case to the Chittenden Superior Court on December 4, 1987 for the limited purpose of determining the availability of the assistant judge not present during trial and to conform the record accordingly. On May 6, 1988 the trial court determined that its records indicated that the assistant judge not in attendance was unavailable on the dates of trial because he was sitting on other matters. Plaintiff does not address the trial court's response to our remand order or support its claim that the response was legally deficient.

conferring title to land in Vermont. *Steinman v. Maier*, 179 Conn. 574, 575, 427 A.2d 828, 829 (1980); cf. *Downer v. Tarbell*, 61 Vt. 530, 533, 17 A. 482, 483 (1889). Neither plaintiff's complaint nor its brief makes clear what its theory of recovery is. Even if plaintiff were successful in impugning defendants' title to that portion of river lots 6 and 7 within the formerly undivided land, it has not demonstrated that it has any colorable claim to the disputed land.

 Moreover, plaintiff errs in attacking the accuracy or relevancy of the court's findings on the acquiescence of the northerly abutters of river lots 6 and 7 to defendants' boundary claims. As to the boundary between defendants' river lot 6 on the south and the school lot on the north, the trial court found:

> 16. There is another old sheep fence depicted on Exhibit B, going back at least to the Civil War, which has been long recognized and accepted by the landowners in the vicinity, including Ernest P. Gokey, one of the defendant's predecessors in title, as the southerly boundary of the School lot (9) and the northerly boundary of lot 6. As between the fence line and the 1800 survey, the fence line is the true northerly boundary of lot 6 since it reflects the patterns of actual use over more than a century, and indicates that over the years lot 6 absorbed that portion of the undivided land that used to be north of it.

This finding is general and does not name the northerly abutters, nor does it specify the mode of acquiescence by "the landowners in the vicinity," who, we may presume, do not include plaintiff or its predecessors. But given the remoteness of the land, the court could properly find that the fence line reflected patterns of actual use and that actual use, though not day-to-day use, was adequate possession as against the northerly abutters, given "the nature and condition of the premises as well as the uses to which it is adapted." *Amey v. Hall*, 123 Vt. 62, 67, 181 A.2d 69, 73 (1962). Though the abutters' acquiescence is not imputed to plaintiff, Finding 16 explains defendants' presence in the disputed land and provides an adequate predicate for awarding title to defendants against a competing claimant

which has not occupied the land and which never has had record title to it.

Plaintiff also errs in arguing that the 1949 acquiescence by its predecessor in title in the westerly boundary of lot 8 as the westerly boundary of its property was ineffective because that acquiescence was not as to *defendants* or their predecessors in title, but rather to a third party, the owner of the Lane lot. The trial court was careful in Finding 14 not to impute acquiescence to defendants or their predecessors. The main point of the finding is that plaintiff's predecessors, the Martins, had filed a map in the Bolton land records claiming ownership of the contested land between river lot 7 and the Lane lot. The Martins later withdrew from this area and agreed to recognize the extension of the westerly boundary of lot 8 as their westerly boundary. These actions erased any claim under the filed map and left the Martins, and later the plaintiff, with no record title claim whatsoever to and with no actual possession of any part of the disputed land. Such actions by the Martins were inconsistent with any possible theory that the acquiescence in the lot 8 boundary was limited to superior claims of the Lane lot owners.

In sum, plaintiff in the present case offered no claim of record title and asserted no possessory interest matching defendants' interest. Defendants, in contrast, presented clear, if general, evidence in support of their claim to the disputed land. We need not determine here whether the generality of the evidence or the want of specificity in the findings would be fatal in a contest for title against an opposing claimant asserting record title or presenting more detailed evidence in support of title acquired through possession. Compare *Heath v. Dudley*, 148 Vt. 145, 148, 530 A.2d 151, 152–53 (1987). The trial court was careful to limit its decision to plaintiff's claim, and its decision was without error.

*Affirmed.*