2005 VT 55

**OKEMO MOUNTAIN, INC. v. John LYSOBEY, Christine Lysobey, Wayne Lysobey, and Beverly Lysobey, et al.**

[883 A.2d 757]

No. 03-514

¶ 1. May 10, 2005. The Lysobeys and Okemo Mountain, Inc. (now known as Okemo LLC) own adjoining parcels of land on Okemo Mountain in Ludlow, Vermont. Both have appeared in this Court three times before to litigate matters relating to the Lysobeys' access to their land. See *Dep't of Forests, Parks & Recreation v. Town of Ludlow Zoning Bd.*, 2004 VT 104, 177 Vt. 623, 869 A.2d 603; *Okemo Mountain, Inc. v. Town of Ludlow*, 171 Vt. 201, 762 A.2d 1219 (2000); *Okemo Mountain, Inc. v. Town of Ludlow Zoning Bd. of Adjustment*, 164 Vt. 447, 671 A.2d 1263 (1995). This appeal concerns the location of the boundary between their respective parcels.

¶ 2. Okemo brought a declaratory judgment action against the Lysobeys in Windsor Superior Court to determine the location of the boundary between Okemo's property and the Lysobeys'. The trial court, after taking extensive evidence, issued findings of fact setting the boundary's location 200 rods west of the Head of the Ludlow First Division. The court further concluded as a matter of law that the Lysobeys' predecessors in interest had acquiesced in the boundary location there. On appeal, the Lysobeys contest both conclusions. As explained below, the trial court's boundary determination is supported by credible evidence and the court correctly applied the requirements for acquiescence. Therefore, we affirm.

¶ 3. The Lysobeys' land is roughly triangular, bounded to the south by state-owned lands, to the north and west by Coleman Brook, and to the east by Okemo's land, which extends east to the Head of the Ludlow First Division.* It is undisputed that this eastern boundary runs approximately north-south; at issue is whether the boundary is 180 rods west of the Head of the First Division, as the Lysobeys claim, or 200 rods west, as Okemo contends. A map is appended to this opinion for illustration only. The Lysobeys claim the boundary is the line connecting points G, D, and E on the map. The trial court found that the boundary is the line connecting points B, C, and F.

¶ 4. The disputed boundary has been defined, in every deed in the Lysobeys' chain of title, by reference to the western edge of the parcel to the east. The Lysobeys' chain of title begins in 1836 with a survey by Joel Warner for himself and Isaac Gibson. At the time of that survey, Isaac Gibson owned the parcels on both sides of the now-disputed boundary. The Warner-Gibson survey parcel includes all of the land now owned by the Lysobeys, plus additional land to the west and south. It defines the eastern boundary as running "southerly on [Isaac] Gibson's west line and A.G. Taylor's west line." It is undisputed that A.G. Taylor's west line was 200 rods from the Head of the First Division at the time of the survey. Every subsequent deed in the Lysobeys' chain of title refers to the 200-rod description referenced in the Warner-Gibson deed.

¶ 5. Okemo's chain of title, defining the property just to the east of the Lysobeys' land, also defines the disputed boundary. First, in 1824, Rufus Barton conveyed ninety acres of as-yet unsurveyed land to Samuel Read, who had it surveyed soon after by N.P. Fletcher. Although the Fletcher survey describes a parcel of land measuring 180 rods east to west, all of the later conveyances in Okemo's chain of title define the western boundary by

---

* The First Division survey, performed in 1788, surveyed land to the east of what is now the eastern boundary of Okemo's parcel. The "Head" of the First Division (the western boundary of that survey) has since been used as a monument by which other boundaries are defined.

reference to the 1836 Warner-Gibson survey of the land to the west. As the trial court found, the Warner-Gibson survey describes the disputed boundary as a straight north-south line 200 rods west of the Head of the Ludlow First Division. The court also found that Okemo's current deed locates the disputed border approximately 200 rods west of the Head of the First Division. It is the conflict between the 1824 Fletcher survey, Barton-Read deed, and all other surveys and land documents which gives rise to this dispute.

¶ 6. On appeal, the Lysobeys contend that the trial court erred both in determining that the disputed boundary was 200 rods west of the Head of the First Division, and in concluding that the Lysobeys' predecessors in interest acquiesced in that location. We consider both arguments in turn.

¶ 7. The Lysobeys advance two grounds of error with respect to the boundary location. First, they contend, based on the Barton-Read deed and the Fletcher survey, that Okemo's property extends 180 rods from east to west, and that first-in-time deeds and surveys are controlling. Second, the Lysobeys ask this Court to discount surveyor John Bruno's testimony and his surveys defining the location of Coleman Brook, which they allege Mr. Bruno misrepresented, either fraudulently or by mistake.

¶ 8. The location of a boundary line is a question of fact, to be determined on the evidence. *Pion v. Bean*, 2003 VT 79, ¶ 15, 176 Vt. 1, 833 A.2d 1248. We review findings of fact only for clear error. V.R.C.P. 52(a)(2). Findings will be sustained on appeal unless, viewing the evidence in the light most favorable to the prevailing party, there is no credible evidence to support the findings. *Mullin v. Phelps*, 162 Vt. 250, 260, 647 A.2d 714, 720 (1994). If the findings are not clearly erroneous, we will not disturb them "despite inconsistencies or substantial evidence to the contrary," *Pion*, 2003 VT 79, ¶ 15, or when they are adopted verbatim from a party's proposed findings. V.R.C.P. 52(a)(2); *In re M.B.*, 162 Vt. 229, 239, 647 A.2d 1001, 1006 (1994).

¶ 9. The Lysobeys argue that the 1824 deed clearly defined the east-west dimension of the Barton-Read parcel as 180 rods. The trial court agreed, and further found that this dimension would have made that parcel twenty rods narrower than the neighboring parcels. The trial court went on to find, however, that "there is no conveyance since the Barton to Read deed in 1824 that describes the east-west dimension of the lot as 180 rods," and found that the 200-rod location was accurate and the 180-rod location was a mistake. This finding was supported by credible evidence, including every relevant conveyance and survey since 1836, and we will therefore not disturb it.

¶ 10. The Lysobeys next contend, based on *Wysinski v. Mazzotta*, 472 A.2d 680 (Pa. Super. Ct. 1984), that senior deeds (i.e., Barton-Read) control over later instruments, and that the trial court therefore erred in considering any deeds executed after 1836. But their reliance on *Wysinski* is misplaced. In *Wysinski*, a Pennsylvania court held that, in a conflict between two deeds from the same grantor, the senior deed would control. 477 A.2d at 683. In this case, however, the two parcels in question were only under common ownership from 1836-1839, when Isaac Gibson owned both. Gibson's subsequent conveyances of both parcels actually support the trial court's finding that the disputed boundary is approximately 200 rods west of the Head of the First Division because both deeds Gibson executed as grantor reflect that location. Thus, the trial court's reliance on post-1836 instruments in the Lysobeys' and Okemo's chains of title was not error, and the trial court properly found that the

180-rod distance in the Barton-Read deed was a mistake.

¶ 11. The Lysobeys also maintain that Coleman Brook's location on the maps prepared by Okemo is not its true location, and that this supports their claim to the 180-rod location. They claim that the actual location of the brook is about 300 feet north of its location on Okemo's maps. However, the trial court found that the location of Coleman Brook does not settle the disputed boundary's location because the brook intersects the disputed boundary at only one point.

¶ 12. There is credible evidence supporting the trial court's determination of Coleman Brook's location. The trial court found that the brook's location on Okemo's maps is consistent with other deeds conveying lands north of the brook. The trial court also found that those deeds do not make sense under the Lysobeys' theory about the brook's location. Based on these findings, the trial court concluded that the Okemo maps reflected the true location of Coleman Brook, and that the Lysobeys' argument was not credible. The trial court therefore adopted, for purposes of its final order, the location of the brook proposed by Okemo. This location is reflected in the illustrative map incorporated into this order. As noted above, the decision to credit a particular witness or piece of evidence is reserved to the fact-finder, and will not be disturbed without some compelling indication of error. *Mullin*, 162 Vt. at 261, 647 A.2d at 720. Finding no such indication here, we will not disturb the trial court's findings or the conclusions based on them.

¶ 13. Second, the Lysobeys maintain that the trial court erroneously concluded that the boundary had been established at the 200-rod location by acquiescence, arguing that the boundary had not been established by acquiescence because they had no knowledge of the boundary location. However, the trial court concluded that the Lysobeys' predecessors in interest had acquiesced in the location of their eastern boundary at the 200-rod location for the statutory period, and that Okemo's claim of ownership was therefore superior to the Lysobeys'. Our review of the trial court's conclusions of law is nondeferential and plenary. *In re Estate of Harding*, 2005 VT 24, ¶ 6, 178 Vt. 139, 878 A.2d 201. We uphold trial court conclusions if they are supported by findings that are, in turn, supported by the evidence. *Abbiati v. Buttura & Sons, Inc.*, 161 Vt. 314, 318, 639 A.2d 988, 990 (1994).

¶ 14. A boundary is established by acquiescence when there is mutual recognition of a given line by adjoining landowners, and continuous possession by one to the line for a fifteen-year period, which is the same as the period required to establish ownership by adverse possession. *D'Orazio v. Pashby*, 102 Vt. 480, 487, 150 A. 70, 73 (1930); see 12 V.S.A. § 501 (requiring that action for recovery of lands be commenced within fifteen years after cause of action accrues). Continued satisfaction and compliance with a boundary marked on the ground is persuasive evidence that it is the correct boundary. *N.A.S. Holdings, Inc. v. Pafundi*, 169 Vt. 437, 446, 736 A.2d 780, 788 (1999). Satisfaction and compliance are often shown by objective circumstantial evidence rather than subjective testimony. See, e.g., *RHN Corp. v. Veibell*, 2004 UT 60, ¶ 25, 96 P.3d 935 (citing cases in which acquiescence was proved by "[o]ccupation up to, but never over, the line," including construction, farming, irrigation, and raising livestock or by silence or failure to object to a line). A boundary established by acquiescence between two landowners is conclusive upon their successors in title, *O'Neil v. Buchanan*, 136 Vt. 331, 332-33, 388 A.2d 431, 433 (1978), and permission granted after the statutory period has run does not defeat an

acquiescence claim. *Moran v. Byrne*, 149 Vt. 353, 355, 543 A.2d 262, 263 (1988).

¶ 15. The trial court's findings support its conclusion that the Lysobeys' predecessors in interest acquiesced in the location of the boundary 200 rods west of the Head of the First Division. As detailed in ¶¶ 5-6 above, the Fletcher survey of 1824 is the only written instrument that describes the disputed boundary at the 180-rod location. The trial court found that both the Lysobeys' and Okemo's predecessors in interest recognized, since 1836, that the boundary in question was a straight north-south line about 200 rods west of the Head of the First Division.

¶ 16. In addition, the 200-rod location was blazed on the ground. The Lysobeys took title to their land in 1986, and the trial court found that there has been a blazed line of trees marking the boundary at the 200-rod location since, at the latest, 1970. The Lysobeys took no formal action to settle the location of the disputed boundary until 1997, by which time the blazed trees had been present for nearly thirty years. While appellants offered conflicting testimony, the trial court credited Okemo forester Arthur Young's testimony that, in 2000, he observed a line of thirty-year-old blazes on trees following the 200-rod boundary. Further, the trial court found that Young's description of the blazed trees was consistent with Okemo surveyor John Bruno's theory that the line was blazed in conjunction with the Plumley survey in 1969. The court also noted that Young's description was consistent with the Nowlan survey in 1981. We will not disturb the trial court's decision to credit Young's testimony about the blaze line, notwithstanding conflicting testimony from the Lysobeys' expert. *Mullin*, 162 Vt. at 261, 647 A.2d at 720. Moreover, the surveys and Young's testimony are also consistent with Okemo's deed from Okemo Summit Estates, and with the long line of conveyances and surveys depicting the eastern boundary of the Lysobeys' land as a straight line running north-south 200 rods west of the Head of the First Division.

¶ 17. Based on the above findings, the trial court concluded that there had been mutual recognition and knowledge of the line by the adjoining landowners "for a very long time," certainly in excess of fifteen years. The trial court noted that the lack of ancient monuments on the ground is not fatal to Okemo's claim because the blaze line, located as it is in a remote area without any other boundary markings, was the equivalent of the claimant "unfurling its flag." See *N.A.S. Holdings, Inc.*, 169 Vt. at 444, 736 A.2d at 787 (upholding trial court's ruling that claimants had established title because they "planted their flag on the land and left it unfurled . . . [and] never retreat[ed] in their claim"); see also *Greenmont Lumber Corp. v. Berger*, 154 Vt. 121, 124, 574 A.2d 153, 155 (1990) (affirming trial court's finding that old stone sheep fence established possession against abutters, considering the remoteness of the property). The blaze line, coupled with the above-noted conveyances and surveys, establishes that, for more than the statutory period, the eastern boundary of the Lysobeys' land has been a straight north-south line approximately 200 rods west of the Head of the First Division. Thus, the trial court correctly concluded that Okemo proved its claim of acquiescence.

*Affirmed.*

Motion for reargument denied July 8, 2005.