STATE OF VERMONT
ENVIRONMENTAL COURT

|   |   |   |
|---|---|---|
| In re: Leiter Subdivision Permit | } | Docket No. 85-4-07 Vtec |
| (Appeal of Stimson) | } | |

## Decision on Pending Motions

This appeal concerns an approval granted by the Town of Woodstock Development Review Board for a two-lot subdivision of land. The abutting property owner, William P. Stimson ("Appellant"), filed a timely appeal of that permit. Now pending before the Court are Applicants' motion for summary judgment or dismissal and Appellant's motion for partial summary judgment and request to stay these proceedings. Applicants are represented by Kaveh S. Shahi, Esq.; Appellant represents himself.

## Background Facts

We recite the following material facts, solely for the purpose of reviewing the pending motions; our recitations of these facts are not final factual findings. See Blake v. Nationwide Ins. Co., 2006 VT 48, ¶21 (citing Fritzeen v. Trudell Consulting Engineers, Inc., 170 Vt. 632, 633 (2000) (mem.)). In our analysis of the respective pending motions, we view the facts material to that specific motion in a light most favorable to the non-moving party. See Lively v. Northfield Savings Bank, 2007 VT 110, ¶5 (citing Toys, Inc. v. F.M. Burlington Co., 155 Vt. 44, 48 (1990)).

1. Applicants, James and Suzanne Leiter, assert that they own 16.96+/- acres of land[1] in the Town of Woodstock, Vermont. The property is located in the Residential Five Acre Zoning District ("R-5 District"). The property is located at 27035 Church Hill Road, and is identified as parcel 08.01.10.

2. Appellant, William Stimson, owns 4.16 acres of land adjacent to the Leiters' property, also in the R-5 District. This property was originally two separate tracts of land that were

---

[1] As is noted in more detail below, several of the issues Appellant raises in his Amended Statement of Questions pertain to a boundary dispute between the parties along their joint boundary line that runs in a general northwesterly to southeasterly direction. Appellant submitted a marked-up copy of Applicants' site map, solely to illustrate the parties' boundary dispute.

It appears that the source of the parties' dispute is the location of a single boundary line; whether it runs along a partial stone wall or to the northeast of that partial stone wall. The width of this disputed area appears to be too narrow to accurately measure, based upon the scale on the photocopied site map supplied by Appellant.

acquired by Mr. Stimson's parents in two separate transactions, the first in 1971 and the second in 1972. Both Stimson deeds are recorded in the Woodstock Land Records. The land was originally conveyed in two equal shares as tenancies in common to Stimson's parents as trustees of their respective trusts. In 2004, Stimson became the trustee of those trusts. In 2005, Stimson acquired the property in his individual name. This deed is also recorded in the Woodstock Land Records. The property is located at 27033 Church Hill Road, and is identified as parcel 08.01.08.

3.	On February 15, 2007, the Leiters submitted an application to the Town of Woodstock Development Review Board ("DRB") to subdivide the 16.96-acre parcel into two lots. One parcel is proposed to be 10.94 acres, and the other parcel to be 6.02 acres. The DRB, on the same day, deemed the application complete and assigned the application number T-3825-07. The application was signed by Suzanne Leiter alone.

5.	The DRB held a meeting on March 27, 2007, at which the Leiters' application was considered. Mr. Stimson was given notice of the meeting and attended to voice his concerns over the subdivision plans. At that meeting, Stimson expressed his claim to a portion of the land to be developed. Stimson did not have a land survey with him at that DRB meeting to support his claim and has not submitted such a survey to this Court to date.

6.	On March 27, 2007, prior to the DRB meeting, Mr. Stimson filed an action in Windsor Superior Court in which he sought to resolve his boundary dispute. The Leiters were named as defendants in that action. The action was based on the dispute over a portion of the parties' joint boundary line. See William Stimson v. James Leiter and Suzanne Leiter, Docket No. 233-3-07 Wrcv (Windsor Sup. Ct.).

7.	On March 30, 2007, the DRB approved the subdivision plan with the condition that "[I]f the survey was found not to be legal or accurate, then the applicant must submit a new application." Id. at 2.

8.	On April 20, 2007, Stimson filed a Notice of Appeal in this Court. The Leiters filed their Motion for Summary Judgment and/or to Dismiss on July 25, 2007. Stimson filed a Cross-Motion for Partial Summary Judgment and Stay on August 27, 2007. Each party has filed an objection to their opponent's pending motion. These motions are now ripe for the Court's consideration.

2

## Discussion

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3). When both parties move for summary judgment, each motion is to be analyzed giving the opposing party the benefit of all reasonable doubts and inferences. Alpine Haven Property Owners Ass'n, Inc. v. Deptula, 175 Vt. 559, 561, (2003). In determining whether a dispute over a material fact exists, a court must accept as true all material allegations made by the opposing party, so long as they are supported by affidavits or other evidentiary material. See White v. Quechee Lakes Landowners' Ass'n, 170 Vt. 25, 28 (1999) (citing Chapman v. Sparta, 167 Vt. 157, 159 (1997)).

Applicants have moved for summary judgment on all issues raised in Appellant's Statement of Questions. Appellant has moved for summary judgment on Question 2 alone. The following is our summary of the issues raised in Appellant Stimson's Amended Statement of Questions, all of which we are asked to address in the course of disposing the pending motions:

1. Do Applicants have sufficient evidence of title or other authority to develop the entire subject property as proposed, particularly since a cloud has been asserted upon the title to a portion of their property and has been presented to the Superior Court for final adjudication?

2. Since a quiet title action has been presented to the Windsor Superior Court, should this Court forestall its review of the pending subdivision application until after the Superior Court resolves the parties' boundary dispute?[2]

3. Where the map accompanying the application does not correctly set forth the boundaries of the Leiter parcel, do the application papers fail to satisfy the requirements of the Woodstock Zoning Regulations ("Regulations")?

4. Is the application form legally sufficient, since it only contains the signature of Suzanne Leiter?

5. Where a portion of the Leiter parcel lies within the "steep slope" and "shallow soils" overlay district, should this Court deny the application due to concerns over suitable sewage disposal, access for emergency vehicles, drainage, and erosion control, since such concerns are not addressed in the application and supporting documents now before this

---

[2] We assume that Appellant's recommendation includes a suggestion that if an appeal were taken from the Superior Court's determination of the boundary dispute, this Court should delay its consideration of the pending application until after the resolution of the boundary dispute becomes final.

3

Court?  In the alternative, Appellant asks whether one or more conditions addressing these concerns should be attached to any approval of the application.

6.  Can a subdivision application be found to be in conformance with the Regulations pertaining to steep slopes and shallow soils when it is not accompanied by a site plan containing topographical information and depicting the specific location of the steep slopes and shallow soils, particularly since the Regulations require an assessment of the proposed development in relation to the site's natural features?

*Questions 1, 2, and 3*

The main issue raised in these Questions concerns the parties' boundary dispute and the relevancy of the outcome of the Superior Court action to the Environmental Court proceedings. Specifically, one course along the northwesterly/southeasterly boundary line separating Appellant's and Applicants' property is in dispute.  From the documents submitted by Appellant, it appears that the boundary in dispute is in the northeast corner of Applicants' property. Appellant claims to own a narrow strip of land to the northeast of the remnants of a stone wall;[3] Applicants' site plan shows this narrow strip of land as belonging to Applicants. Both parties acknowledge that an action to quiet title is pending in the Windsor Superior Court regarding the strip of land in question, and that the parties are ready for trial on this issue.

There is no suggestion here that this Court has concurrent jurisdiction with the Superior Court to resolve the parties' boundary disputes.  However, ownership issues are sometimes intertwined with issues within this Court's jurisdiction.  In municipal zoning application appeals, this Court has repeatedly stated that an applicant has the initial burden to produce some evidence of title or an interest in the property to be developed.  Clermont Terrace Site Plan and Zoning Permit Approvals (Appeal of Curtis), Docket Nos. 46-2-05 Vtec and 72-4-05 Vtec, slip op. at 6 (Vt. Envtl. Ct. Mar. 22, 2006); Appeal of Monty, Docket Nos. 7-1-04 Vtec and 47-3-04 Vtec (Vt. Envtl. Ct. Jan. 24, 2006); Appeal of Van Nostrand, Docket Nos. 209-11-04 Vtec and 101-5-05 Vtec (Vt. Envtl. Ct. Jan. 13, 2006); Appeal of Cole, Docket Nos. 174-10-01 Vtec and 47-3-04 Vtec (Vt. Envtl. Ct. May 2, 2003); and Appeal of Bowman, Docket No. 70-5-96 Vtec (Vt. Envtl. Ct. June. 21, 2005).

There is a delicate balance between the evaluation of this initial threshold burden and the Court's jurisdictional limitations.  Once some evidence has been put forth on an applicant's

---

[3]  See Footnote 1, above.

4

interests and right to develop the property, "further claims to title, or claims attacking the same must go to the appropriate Superior Court." See Monty, Docket Nos. 7-1-04 Vtec and 47-3-04 Vtec slip op. at 6-7 (Vt. Envtl. Ct. Jan. 24, 2006) (quoting Van Nostrand, Docket Nos. 209-11-04 Vtec and 101-5-05 Vtec slip op. at 9 (Vt. Envtl. Ct. Jan. 13, 2006)). The threshold burden an applicant must meet is relatively low; we know of no requirement in the applicable state statutes or municipal regulations that an applicant submit affidavits to meet this burden, as Appellant suggests.

Mr. and Mrs. Leiter represent through their application that they own the lot that they are seeking to subdivide. Their claim to ownership is also reflected in statements and affidavits they have supplied to this Court. Reference has been made to a survey, not yet put into evidence by Applicants, which presumably sets forth the boundaries of the Leiters' parcel. Appellant has submitted a copy of this survey, solely for the purpose of supporting his contention that a portion of the property claimed by Applicants is in dispute. However, Appellant has not come forward with evidence showing his ownership of a material portion of the Leiter parcel.[4] While Appellant has convinced us that a boundary dispute exists between the parties, his assertions in support of summary judgment fall short in two regards: first, he fails to provide evidence to show that a material portion of Applicants' land suffers under a cloud of title, thereby challenging the threshold evidentiary foundation of the Leiters' application. Second, even if we were to assume for the sake of our review of the pending motions that the narrow strip of land along the remnants of the stone wall was owned by Appellant and not Applicants, there has been no evidence presented that such a narrow strip of land being removed from the pending application would be a fatal deficiency.[5]

Thus, particularly when we view the facts in a light most favorable to Applicants, we cannot say on the record before us that Applicants will be unable at trial to meet their threshold burden of producing the requisite evidence of ownership of the property they wish to subdivide.

---

[4] See Footnote 1, above. In this context, we would regard Appellant's claim to title as "material" if there was evidence presented that without the disputed portion of land, Applicants proposed subdivision could not conform with the applicable Regulations. However, we caution that, since such evidence is not before us, we cannot determine what would constitute a "material" land dispute and whether such a dispute would result in dismissal of the pending application, particularly on summary judgment.

[5] The single course in dispute, running nearly parallel to the stone wall remnants, appears to be less than 383 feet long. The length of the stone wall remnants, the width of the disputed parcel and its acreage cannot be ascertained from the evidence provided. The Court looks forward to the presentation of evidence at trial on these points, as well as evidence on whether a condition for requiring submission of a corrected survey, with or without an amended application, would be appropriate under the Regulations.

While we have no intention of venturing beyond this Court's subject matter jurisdictional limits, we find it difficult to see how, based upon the evidence presented here, the parties' boundary dispute could materially impact upon the pending subdivision application, whatever the outcome of the Superior Court proceedings.

Appellant offers a Massachusetts case, among others, in support of the proposition that a subdivision should not be approved where it included land not owned by the applicant. See Kuklinska v. Planning Bd. of Wakefield, 256 N.E.2d 601, 605 (Mass. 1970). This case does not appear instructive in this matter. The opinion reports the determination of the Massachusetts Supreme Judicial Court in three consolidated cases: two separate appeals of a municipal subdivision approval by Anna Kuklinska and Mary Kuklinsky, plus a trespass and quiet title action by Mary Kuklinsky. In rendering its decision, the Massachusetts Supreme Judicial Court reversed the trial court's determination that the disputed narrow strip of land belonged to the developer; the Supreme Court determined that the record lacked sufficient evidence to support the trial court's conclusion and was erroneously based upon a Land Court determination in which Mary Kuklinsky was not given notice or an opportunity to participate. Thus, while the case caption suggests that Kuklinska v. Planning Bd. of Wakefield announced a determination in a municipal land use appeal, the substance of the decision announces a determination in a quiet title and trespass action, with a focus on a maxim that our Supreme Court often repeats: that "[f]indings will be sustained on appeal unless, viewing the evidence in the light most favorable to the prevailing party, there is no credible evidence to support the findings." Okemo Mountain, Inc. v. Lysobey, 2005 VT 55 ¶8, 178 Vt. 608, 610 (2005). If the findings are not clearly erroneous, the Supreme Court will not disturb them 'despite inconsistencies or substantial evidence to the contrary,' Pion v. Bean, 2003 VT 79, ¶ 15.

We do not find the Kuklinska v. Planning Bd. of Wakefield decision instructive here because it pertains to the parties' boundary line dispute much more than the challenges to the municipal subdivision approval. If we were faced here with an already final determination that Mr. Stimson owned a material portion[6] of the land the Leiters were seeking to subdivide, the Kuklinska decision would be instructive. Since those are not the facts, nor the procedural posture of this appeal, we decline to render summary judgment in Mr. Stimson's favor.

---

[6] The disputed area in the Kuklinska case involved 7,200 square feet. Kuklinska, 256 N.E.2d at 602.

The legal conclusion reached here does not result in summary approval of the Leiters' subdivision application. Rather, we conclude as a matter of law that the parties' boundary dispute, not yet resolved in Appellant's favor in a manner to impact a material portion of the lands Applicants seek to subdivide, does not require us to forestall our review of the appealed-from subdivision application proceedings. In this regard, we grant partial summary judgment in Applicants' favor on this legal issue.

Appellant has also moved to stay the proceedings in the Environmental Court while the Superior Court matters are pending. As discussed above, this Court is charged with the responsibility of determining whether an application for development or subdivision meets the applicable town zoning regulations. Bearing in mind the jurisdictional limitations discussed above, this Court cannot adjudicate the rights of the parties in regard to the small strip of land in question; we can only determine whether this subdivision application conforms to the Woodstock Regulations. Because of the nature of the dispute between the parties, and for the reasons discussed above, this Court sees no reason to stay these Environmental Court proceedings while the quiet title action is pending. Therefore, Appellant's motion to stay the proceedings is DENIED.

We note several more reasons for not staying these proceedings. First, having the two cases considered concurrently will not amount to a violation of procedural due process. Appellant claims that adjudicating the merits of the subdivision permit without resolving the boundary dispute first will deny him the opportunity to be heard. The Court finds no merit in this argument. Appellant is free, and is encouraged, to have the Windsor Superior Court adjudicate his rights regarding the property he claims to own. Having the Environmental Court proceedings go forward concurrently in no way prejudices Appellant's legal rights to pursue his cause of action.

Second, a decision in the Environmental Court before a resolution in the Superior Court will not render the boundary line in question settled and unchangeable.[7] A common condition in many municipal subdivision permits, including those issued in Woodstock, requires an applicant to file a mylar copy[8] of the site plan in the town land records, setting forth the boundary lines of

---

[7] Were this true, any boundary disputes discovered after zoning approval is given could not be brought to the proper Superior Court for adjudication. We are not aware of such a legal precedent and decline to adopt it here.

[8] Mylar is a plastic material that degrades less readily than the paper stock used in preparing original site plans. In all other respects, the mylar copy is no different than the final site plan approved by the appropriate municipal panel.

7

the property and describing the details of the subdivision. While the recording of a mylar copy of the final approved site plan serves an important purpose of memorializing what was approved by the municipal panel, we know of no precedent that it represents an irrefutable presumption of any parties' claim to title. We decline to adopt such a rule here.

It is important to note that the Woodstock Regulations do not view property lines as permanent and irrefutable; the Regulations allow for lot line adjustments when they become known that lot lines as represented and recorded are incorrect. Section 605 of the Regulations authorizes applicants seeking a lot line adjustment to obtain administrative approval. While this regulatory provision is not necessarily at issue in this appeal, it is illustrative of the difficulty in determining lot lines and drafting property descriptions. As the case at hand shows, one surveyor can arrive at one conclusion about the location of a boundary line, but a deed or other evidence may place that boundary line elsewhere. Thus, towns allow for lot line adjustments, so that property owners may correct their site maps when future circumstances justify such a change.

We also note that there are alternate means by which a future lot line adjustment can be addressed. One such example is contained in the condition in the permit granted by the DRB here, which reads as follows: "If the subdivision condition requires that if the survey is found not to be a legal and accurate survey, the applicant shall resubmit a new application."[9] Appellant argues that if the Environmental Court were to issue a decision with a similar condition on the merits of the pending application, thereby establishing the property boundaries through the filing of a mylar copy of the site plan, that he would be collaterally estopped from raising his title claim in subsequent appeals, and that the DRB would not be able to reopen the decision to grant this permit in the first place. Appellant appears to argue that the "successive application rule" would bar the DRB and the Court from considering a second application involving the same property and proposal. This argument seems misplaced, particularly in light of the stated condition in the permit.

The "successive application rule," otherwise referred to as collateral estoppel in the zoning context, states that "a zoning board or planning commission may not entertain a second application concerning the same property after a previous application has been denied, unless a

---

[9] We cite to the condition contained in the DRB decision below for illustrative purposes only. Given that his is a _de novo_ appeal, any such condition and the propriety of the same will be the subject of evidence and legal arguments presented at trial.

8

substantial change of conditions ha[s] occurred." See In re Armitage, 2006 VT 113, ¶ 4 (quoting In re Carrier, 155 Vt. 152, 158 (1990)). Appellant's "successive application rule" argument seems self-defeating, since we cannot conceive of the circumstances under which a material change in a boundary line would not be regarded as a "change in circumstances" under Armitage. Stating this point in reverse has particular bearing on the pending issue before us: a change in a common boundary line that would not be deemed material could not be a basis for impacting upon a municipal land use proceeding. As noted above, we have yet been presented with any evidence that the parties' boundary dispute, even when viewed in a light most favorable to Appellant, would have a material impact upon this Court's consideration of whether Applicants' subdivision proposal conforms to the Woodstock Regulations.

Third, the boundary line in dispute does not appear to have any bearing on the subdivision itself. The Regulations require that applications and supporting documentation depict the location of the property, the boundary lines and location of the proposed projects. At least one document submitted to the Court says that the Applicants did submit these documents to the DRB. Appellant has noted that these plans have not yet been submitted for the Court's review. We expect that such evidence has already or will be disclosed in the discovery process and will be presented into evidence at trial. However, as noted above, the small amount of land in dispute does not appear to have any effect on the criteria listed for the consideration in Regulations § 710.[10] We see no reason to stay these proceedings and await the Superior Court's determination of an issue that is not relevant to the proceeding now before this Court. Therefore, Applicants' motion for summary judgment on Question 3 is hereby GRANTED.

To summarize, based on the reasons stated above, Appellant's motion to stay the proceedings in the Environmental Court is hereby DENIED. Applicants' motion for summary judgment on Questions 1, 2, and 3 is hereby GRANTED.

---

[10] Section 710 of the Regulations, entitled "Conditional Use Approval," requires that a use or structure requiring a conditional use permit must conform to the general standards in the Regulations by not affecting the following: (1) the capacity of existing or planned community facilities, (2) the character of the area affected, (3) traffic on roads and highways in the vicinity, (4) the by-laws then in effect, (5) utilization of renewable energy sources, (6) the proposed structure or use must meet specific standards with respect to the following: (7) minimum lot size, (8) distance from adjacent or nearby uses, (9) minimum off-street parking and loading facilities, (10) landscaping and fencing, (11) design and location of structures and service areas, (12) size, location, and design of signs, (13) access and circulation.

*Question 4*

With his Question #4, Appellant asserts that when an applicant signs a zoning application, the applicant is representing that its contents are accurate, is praying for the relief requested, and is manifesting his consent to the possible impositions of conditions that may encumber the property. Since only Suzanne Leiter signed the application, and there is no testimony as to the reason for Mr. Leiters' omitted signature or authorization of Mrs. Leiter to sign for him as his agent, Appellant argues the application is invalid. Appellant further argues that Mr. Leiter would not be bound by this Court's rulings on the pending application because he did not sign it; Appellant completes this argument by asserting that Mr. Leiter, if allowed to proceed on the application not signed by him, would be reaping the benefits of the subdivision while avoiding any of its consequences. Appellant also argues that since the Regulations do not specifically require the signatures of all applicants, a ruling in favor of Applicants would in effect be a ruling that no signature of any applicant is ever required. We disagree.

Both James and Suzanne Leiter represent themselves to be the owners of the property to be subdivided, both are listed as the applicants on the application, and both are jointly represented by counsel in this proceeding. The materials presented to this Court reflect Mr. Leiter's participation in this process; Mr. Leiter was the party that presented the application and materials to the DRB. Additionally, his signature appears on a later document, entitled Overlay Zoning Conditional Use Support Statement, dated March 6, 2007, that comprises a portion of the application. It is disingenuous to argue that Mr. Leiter will not be fully bound by his representations in support of the pending application and yet stands to reap only the benefits and not the consequences of the application and permit later issued.

We find no provision in the Woodstock Regulations that specifically require all applicants to sign the application. Holding that one signature is sufficient is not the equivalent of holding that no applicant ever need to sign. The former Environmental Board Rules require a permit to be signed by the applicant and all co-applicants, or by authorized agents of the aforementioned, as the case may be. See EBR 10(A). But the Woodstock Regulations state no such rule. For the purposes of this application, the single signature is sufficient, and the DRB deemed the application complete, being signed as such. Mrs. Leiter provided a signature that would attest to the accuracy and veracity of the statements presented in the application and accompanying materials.

While Appellant is entitled to all reasonable doubts and inferences in opposing this motion for summary judgment, it is unreasonable to accept the inferences proposed by Appellant. Appellant is asking this Court to infer that Mr. Leiter is attempting to evade his responsibilities as a result of not signing the application. It is unreasonable to conduct a burdensome inquiry into the Leiters' intention and conduct during the past application process. But, it is also unreasonable to accept the inferences set forth by Appellant for which there is no support, and to find that because Mr. Leiter did not sign the application, the application is incomplete and therefore invalid. Based on the foregoing analysis, the Applicants' motion to dismiss Question 4 is hereby GRANTED.

*Questions 5 and 6*

These Questions address the location of the Leiters' property within the overlay districts, and the information provided in the application regarding suitable sewage disposal, access for emergency vehicles, drainage, and erosion control. Appellant argues that because site plans or other documents demonstrating the application's conformance to the Regulations regarding these issues have not yet been presented to the Court, the application is therefore insufficient. Under the applicable standard of review for a motion for summary judgment, the information supplied to the Court is sufficient to show that there is a genuine issue of material fact that remains and needs to be addressed at a merits hearing. Accordingly, Appellees' motion for summary judgment on Questions 5 and 6 is DENIED.

In denying Appellees' motion, this Court is allowing the application to proceed to a merits hearing. See Grand View Site Plan Application (Appeal of Morse), Docket No. 161-8-05 Vtec, slip op. at 5-6 (Vt. Envtl. Ct., June 15, 2006). This Court will conduct a de novo review of the issues within the application preserved for our review on appeal. Clermont, Docket Nos. 46-2-05 Vtec and 72-4-05 Vtec slip op. at 1 n.1 (Vt. Envtl. Ct. Mar. 22, 2006). Under de novo review, the Court views the application and supporting materials as if no proceedings have taken place before the DRB. See In re Green Peak Estates, 154 Vt. 363, 372 (1990) (citing In re Poole, 136 Vt. 242, 245 (1978)). In this light, the issues presented in these two questions are not well suited to be dealt with in pretrial motions, but rather are more properly handled in a trial on the merits, wherein a thorough examination of the evidence may be conducted, the evidence may be put in context by a site visit and a determination may be made as to the conformity of the

11

subdivision plans to the Regulations. All parties should be prepared at trial to present all evidence that they wish the Court to consider on the issues presented in Questions 5 and 6.

## Conclusion

Based on the foregoing, Applicants' motion for summary judgment on Questions 1, 2, and 3 are hereby **GRANTED** and Applicants' motion to dismiss Question 4 is **GRANTED**. Appellant's motion for summary judgment on Question 2 alone and motion to stay the proceedings in this Court are hereby **DENIED**. Applicants' motion for summary judgment on Questions 5 and 6 are hereby **DENIED**.

The parties should prepare for a trial on the merits of the application, on the issues presented in Questions 5 and 6.


Done at Berlin, Vermont, this 2nd day of January, 2008.


_____
Thomas S. Durkin, Environmental Judge

12