*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2015-030

AUGUST TERM, 2015

| | | |
|---|---|---|
| Clark and Maura Pierson and<br>James and Sarah Pierson | } | APPEALED FROM: |
| | } | |
| | } | |
| | } | Superior Court, Franklin Unit, |
| v. | } | Civil Division |
| | } | |
| | } | |
| M'nt Maple, LLC | } | DOCKET NO. 444-9-12 Frcv |

Trial Judge: A. Gregory Rainville

In the above-entitled cause, the Clerk will enter:

In this boundary dispute, plaintiffs appeal from the superior court's order declaring that defendant is the owner of the disputed parcel of land. We affirm.

The critical facts are not in dispute. The parties contest ownership over a 13.5-acre parcel of land known as Beaver Pond. The parcel borders the parties' adjoining properties. Members of the Pierson family have owned plaintiffs' property since Douglas and Patricia Pierson purchased the former John Carey farm, located in the Town of Fletcher, on January 15, 1969. Neither the deed involving the 1969 transfer nor the deeds concerning subsequent intra-family transfers contain metes-and-bounds descriptions of the property or reference any maps or surveys. Nor do any prior deeds in plaintiffs' chain of title reference landmarks or surveys.

Regarding the chain of title to defendant's property, Real Estate Equities of Vermont, Inc. transferred land in 1972 to Fletchmore Farms via a deed that did not contain a metes-and-bounds description of the land conveyed, but described the land by reference to a prior deed in the chain of title and stated that the conveyance was being made "pursuant to and in accord with" a survey done by George Bedard and to be filed with the deed. The 1972 Fletchmore Farms deed was recorded on August 11, 1972, and a 1972 survey done by Mr. Bedard was filed six days later with the Town of Fletcher land records. Neither the 1972 Bedard Survey nor surveys done by Mr. Bedard in 1970 and 1971 included Beaver Pond as part of the property conveyed to Fletchmore Farms in 1972. In 1975, Fletchmore Farms conveyed to Ronald Villeneuve part of the land it had obtained via the 1972 deed. The 1975 Villeneuve deed contained a detailed metes-and-bounds description of the property that included Beaver Pond based on a corrected survey done by Mr. Bedard in 1975. This property was transferred to Ann Villenueve in 1990 and then sold to defendant M'nt Maple, LLC in 2009. The 2009 M'nt Maple deed describes the land conveyed by reference to the 1990 deed, which in turn references the 1975 Bedard survey that included Beaver Pond in defendant's chain of title. The 1975 Survey was not filed in the Town of Fletcher land records until December 2011. Neither plaintiffs nor any of their

predecessors in title acquired any land from Fletchmore Farms after 1969. Neither defendant nor any of its predecessors in title acquired any land from Fletchmore Farms after 1975.

In late 2011, a dispute between the parties arose over ownership of Beaver Pond. Plaintiffs filed a declaratory judgment action in September 2012, seeking to quiet title over the disputed parcel. Defendants counterclaimed, alleging that they had record title and, in any event, had acquired the property through adverse possession and acquiescence by plaintiffs. The parties filed opposing motions for summary judgment in the summer of 2013. The court denied both motions, and a trial, which included a site visit, was held over two days in April 2014.

On December 3, 2014, the trial court issued a decision declaring that Beaver Pond, as established in surveys created by Mr. Bedard between 1975 and 1977, belonged to defendant. The court concluded that plaintiffs, as the party bringing the action to quiet title, had failed to produce evidence from either their chain of title or a surveyor to support their claim of ownership. According to the court, the only documentary evidence presented by plaintiff in support of their claim was the 1972 Bedard survey referenced in the 1972 Fletchmore Farms deed in defendant's chain of title. Relying on that survey, plaintiffs asserted that the 1975 Villeneuve deed and subsequent deeds in defendant's chain of title purported to convey land— Beaver Pond—that the grantor did not own. The court concluded that the 1972 Bedard survey merely referenced plaintiffs as abutting landowners and did not purport to define their property. The court found credible Mr. Bedard's trial testimony that the 1972 survey was inaccurate and was corrected by the 1975-1977 surveys. According to the court, the evidence demonstrated that the grantor in the 1972 Fletchmore deed intended to convey all of its property, which, as identified by the corrected 1975-1977 surveys, included Beaver Pond.[*] The court further stated that even if plaintiffs could claim legal title to Beaver Pond through the 1972 Fletchmore Farms deed and its accompanying survey, they did not have an unbroken chain of title under the Marketable Record Title Act, 27 V.S.A. §§ 601-616, because the 1975 Villenueve deed granted title to the disputed parcel to defendant's predecessor in title. Further, the court concluded that even if defendant did not possess record title to Beaver Pond, it had a right to the property under the doctrines of adverse possession and acquiescence.

On appeal, plaintiffs argue that: (1) the trial court erred by not concluding that they held record title over Beaver Pond, given that Beaver Pond was not within defendant's chain of title, as indicated by the 1972 Bedard survey that was incorporated into the 1972 Fletchmore Farms deed; (2) the doctrine of after-acquired title is inapplicable in this case because there was no corrective conveyance of Beaver Pond to any of defendant's predecessors-in-title following the 1972 Fletchmore Farms deed; (3) the trial court abused its discretion by failing to credit the uncontested testimony of their expert with respect to their claim to record title, while crediting the unsupported testimony presented by defendant's expert, Mr. Bedard; and (4) defendant failed to present evidence sufficient to support ownership by adverse possession or acquiescence.

---

[*] The court noted that defendant's right to Beaver Pond was protected by the doctrine of after-acquired title. The after-acquired-title doctrine stands for "[t]he principle that title to property automatically vests in a person who bought the property from a seller who acquired title only after purporting to sell the property to the buyer." Black's Law Dictionary (10th ed. 2014). Given our resolution of the case, we need not consider the applicability, if any, of the after-acquired-title doctrine in this case.

2

Plaintiffs first argue that the 1972 deed and accompanying survey amounted to an admission by defendant's predecessor-in-title that its property did not include Beaver Pond, and thus later deeds in defendant's chain of title purported to convey land—Beaver Pond—that was not owned by defendant's predecessors in title. Thus, in plaintiffs' view, record title lies with them. We disagree.

The most plaintiffs can show by virtue of this argument is that defendant does not own the property—not that plaintiffs do own it. See Greemont Lumber Corp. v. Berger, 154 Vt. 121, 123-24 (1990) (stating that "[e]ven if plaintiff were successful in impugning defendants' title" to the disputed property, it failed to satisfy its "initial burden of establishing its claim under some theory recognized as conferring title to land in Vermont"); Davis v. Moyles, 76 Vt. 25, 33 (1903) ("The general rule is that recitals in a deed are binding by way of estoppel upon the parties and those who claim under them, but they do not bind mere strangers, or those who claim by title paramount the deed.").

Even if we accepted plaintiffs' argument that the 1972 deed conveyed from Real Estate Equities of Vermont, Inc. to Fletchmore Farms only the property described in the 1972 Bedard survey, regardless of whether that survey mistakenly depicted the bounds of the parcel owned and conveyed by the grantor, the remaining unconveyed property of Real Estate Equities of Vermont, Inc. would not devolve to plaintiffs; it would belong to the grantor or the grantor's successors. Plaintiffs acknowledged that they never had a clear idea of the boundary line and had never asserted ownership rights to the Beaver Pond. In fact, maps submitted by plaintiffs and their predecessors-in-title in connection with Vermont's Use Value Appraisal Program did not depict the Beaver Pond as being part of plaintiffs' property. Given the court's conclusion that the 1995 Bedard survey accurately corrects the 1972 survey and depicts the bounds of the parcel owned by Real Estate Equities of Vermont, Inc. prior to the 1972 conveyance, and the absence of any other evidence that the Beaver Pond is included in the land conveyed through plaintiffs' chain of title, there is no basis for concluding that plaintiffs own the disputed property. For that reason, as between the parties to this case, the trial court did not err in determining that defendant has the stronger claim to ownership of the Beaver Pond. Our decision leaves open the possibility that Real Estate Equities of Vermont, or its successors, may have a valid claim to ownership of the disputed property; because they are not parties to this suit, and cannot be bound by resolution of this case, we do not purport to adjudicate its rights at this time.

Plaintiffs also assert that the trial court abused its discretion by not accepting the opinion of their expert as to who held record title to the Beaver Pond and by accepting the unsupported testimony of Mr. Bedard regarding the bases for correcting the 1972 survey. We find no merit to these arguments. Within a couple of years of doing the 1972 survey, Mr. Bedard followed up with corrected surveys based on his discussions with neighbors and examination of land records. The court found credible and persuasive Mr. Bedard's lengthy and detailed testimony, including his testimony that he was confident as to the accuracy of the corrected surveys, which placed the Beaver Pond within defendant's chain of title. As the factfinder, it was within the province of the trial court to assess the credibility of witnesses and weigh the evidence. See Thibault v. Vartuli, 143 Vt. 178, 179-80 (1983). The court was not obligated to accept the legal opinion of plaintiffs' expert as to which party had the better claim to title over Beaver Pond. That was for the court to determine, and, as noted, the record supports the court's determination in that regard. It was also within the province of the court to assess the credibility of, and to weigh, Mr. Bedard's testimony.

Given our resolution of the case, we need not consider the trial court's conclusion that defendant was also entitled to the property, in the alternative, under the doctrines of adverse possession and acquiescence.

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice