2014 VT 90

### J. Daniel Mahoney, Edward J. Mahoney, Patrick J. Mahoney, et al. v. Tara, LLC

[107 A.3d 887]

No. 13-183

Present: Reiber, C.J., Skoglund and Robinson, JJ., and Teachout and Eaton, Supr. JJ., Specially Assigned

Opinion Filed August 14, 2014

414

*Liam L. Murphy* and *Damien J. Leonard* of *Murphy Sullivan Kronk*, Burlington, for Plaintiffs-Appellants/Cross-Appellees.

*Christina A. Jensen* of *Lisman Leckerling, P.C.*, Burlington, for Defendant-Appellee/Cross-Appellant.

¶ 1. **Reiber, C.J.** This case, in which plaintiffs claim ownership of a parcel of beach and a narrow strip of land adjacent to their neighbor's property, is before us for the second time. We affirm the trial court, although our reasoning differs in certain respects.

¶ 2. We previously summarized the facts as follows:

> Plaintiffs' family began renting a property on the lake (the Mahoney Lot) in 1949 and eventually purchased it in 1976. Throughout their lease and ownership of the

Mahoney Lot, and by the terms of their deed, plaintiffs enjoyed the use of approximately seventy-five feet of lake frontage. The adjacent lot to the northeast (the Tara Lot) was owned by Vermont Catholic Charities, Inc. (VCC) from 1958 until 2006 when it was sold to defendant. During VCC's ownership of the Tara Lot, VCC recognized the disputed boundary line where plaintiffs believed it to be and marked it with signs. In 2007, defendant filed an application to subdivide the Tara Lot and included in the application a survey showing its southerly boundary line cutting plaintiffs' beach in half (the Disputed Portion).

*Mahoney v. Tara, LLC*, 2011 VT 3, ¶ 2, 189 Vt. 557, 15 A.3d 122 (mem.). In response to defendant's development application, plaintiffs filed a complaint to quiet title in December 2007. Defendant filed a motion to dismiss in January 2008, which the trial court granted, but did not file an answer or counterclaim, nor did it assert affirmative defenses. This Court reversed the trial court's dismissal of plaintiffs' claim that they had acquired the land by adverse possession. We held that 12 V.S.A. § 462's exemption for public, charitable and pious uses, "[b]y its plain terms," focuses "not on lands *held* by a public pious or charitable user . . . but rather on 'lands given, granted, sequestered or appropriated to a public, pious or charitable *use.*' " *Id.* ¶ 10 (quoting § 462). We therefore remanded to the trial court for further development of the factual record to determine whether VCC's use of the property qualified for the exemption. We did not address plaintiffs' claim that § 462 is inapplicable to acquiescence claims.

¶ 3. On remand, the trial court made factual findings as to both plaintiffs' and VCC's usage of the disputed property, the time period that any period of acquiescence or adverse possession had run, and whether plaintiffs' use of the property was permissive. As to plaintiffs' usage, the trial court found that there was little evidence concerning the usage of either disputed area by plaintiffs' predecessors-in-interest, apart from the remnants of an old wire fence along the boundary line likely used for grazing animals. Accordingly, the court concluded that the historical record began with plaintiffs' arrival in 1949. The court found that, from 1949 to the present, plaintiffs' use of the beach area was "[c]onsistent with the nature of a seasonal camp," and, though plaintiffs had not built any permanent structures on the beach, they had "carried on

all of the activities associated with ownership" of the waterfront with "great enthusiasm." Such activities included swimming, storing boats, camping, lighting bonfires, walking, visiting, and playing by the family's nine children and their relatives and friends. VCC's predecessor-in-interest, Camp Iroquois, never appeared to dispute plaintiffs' usage, and by 1950 had placed a "private beach" sign consistent with plaintiffs' understanding of the boundary. The court concluded that plaintiffs' treatment of the beach area was continuous, open, hostile, and exclusive, consistent with the requirements of adverse possession. The court also found that from 1949 onwards plaintiffs and their neighbors accepted by acquiescence the barbed wire and the seventy-five feet of shorefront as establishing the boundary lines of the property, consistent with plaintiffs' understanding.

¶ 4. As to defendant, the trial court found that defendant's predecessor-in-interest, VCC, used the property as a camp for poor children, Camp Tara, between February 21, 1958, when VCC took title for the purpose of creating Camp Tara, and March 18, 2004, when the camp was dissolved by the Secretary of State. The court held that this use of the property as a camp qualified for the charitable exemption under § 462 and excluded it from the time period of plaintiffs' adverse possession.

¶ 5. The court further concluded that plaintiffs' period of hostile use came to an end when they filed suit to quiet title in December 2007, and, in any event, when defendant purportedly granted plaintiffs permission in early 2008 to use the disputed lands so long as their suit was pending.[1] From these findings, the court concluded that plaintiffs' adverse possession spanned from July 1949, when plaintiffs began renting the property and occupying the disputed lands, through February 1958, and from March 2004 through January 2008, when defendant's motion to dismiss was filed. These periods of adverse possession totaled less than thirteen years, and were insufficient to confer title by adverse possession. The court ruled against plaintiffs on their acquiescence claim for similar reasons, holding that § 462's charitable exemption applies equally to adverse possession and acquiescence claims.

¶ 6. On appeal, plaintiffs argue that the trial court erred in holding that plaintiffs' suit to quiet title and defendant's unilateral

---

[1] The trial court found the date of this grant of permission to be January 2008, but plaintiffs claim that it was actually March 2008.

grant of permission for plaintiffs to use the disputed land tolled the statute of limitations on their adverse possession claim, that § 462 does not apply to acquiescence claims, that the trial court erred in determining that plaintiffs' predecessors did not acquire the property by acquiescence prior to 1949, when Camp Tara bought the property, and that, as a result of erroneous fact finding, the trial court failed to correctly determine the time during which the statute of limitations for adverse possession ran in plaintiffs' favor.

## I.

¶ 7. We begin with plaintiffs' claim that the court erred in holding that plaintiffs' suit to quiet title ended their period of adverse possession as a matter of law. We review the trial court's legal conclusions de novo. *Okemo Mountain, Inc. v. Lysobey*, 2005 VT 55, ¶ 13, 178 Vt. 608, 883 A.2d 757 (mem.) (noting that review of trial court's conclusions of law is "nondeferential and plenary").

¶ 8. Title 12, § 501 of the Vermont statutes provides that "an action for the recovery of lands, or the possession thereof, shall not be maintained, unless commenced within fifteen years after the cause of action first accrues to the plaintiff or those under whom he claims." This Court has not yet evaluated the effect of an action to quiet title on the statute of limitations for adverse possession claims under § 501. The trial court stated that "[t]he majority rule is that an action to establish title brings the period of unchallenged adverse possession to a close," and that "[t]his principle applies equally to claims" brought by either the adverse possessor or the title owner. (citing *Cal. Md. Funding, Inc. v. Lowe*, 44 Cal. Rptr. 2d 784, 787-88 (Ct. App. 1995)). Therefore, the court concluded that the period of adverse possession closed as a matter of law once plaintiffs filed their suit to quiet title in December 2007.

¶ 9. ▇▇▇ We conclude that the trial court's interpretation, though plausible, is inconsistent with the nature of adverse possession claims as defined in Vermont law. "To prevail on a claim of adverse possession in Vermont, the adverse possessor must show that he or she has used or possessed disputed property in an open, notorious, hostile, and continuous manner throughout the limitations period of fifteen years." *Roy v. Woodstock Cmty. Trust, Inc.*, 2013 VT 100A, ¶ 29, 195 Vt. 427, 94

A.3d 530. In *Roy*, we explained the common law roots of adverse possession in Vermont:

> Adverse possession is a common law cause of action and is not specifically controlled by Vermont statute, except in the sense that such an action can be brought only after the statute of limitations for the recovery of land has run. Once the prescriptive period has run, the adverse possessor acquires title "as perfect as acquisition by grant." *Montgomery v. Branon*, 127 Vt. 83, 89-90, 238 A.2d 650, 655 (1968). Thus, an adverse possession claim is really one for recognition of title and enforcement of the rights that accompany title.

*Id.* ¶ 35 (citations omitted). In other words, although an adverse party bears the burden of proving the elements of adverse possession, *id.* ¶ 29, her action, if successful, does not *confer* title but rather *recognizes* title vested independently of the judgment. See 3 Am. Jur. 2d *Adverse Possession* § 7 ("Title by adverse possession has been held to rest on a presumed grant or conveyance. . . . At the end of the appropriate statutory limitations period, the presumption that there was a grant crystallizes into a rule of law and becomes irrebuttable."); *Crone v. Nuss*, 263 P.3d 809, 813 (Kan. Ct. App. 2011) ("If the trespasser uses the land as his or her own for the length of time specified in the state's statute of limitations . . . , the owner is barred from recovering possession of the land . . . . [B]y failing to protect his or her rights of ownership, a landowner acquiesces in the transfer of ownership . . . ."). Based on this analysis, we concluded in *Roy* that the fifteen-year statute of limitations is not an affirmative defense that must be raised by the title owner, but rather is part of the prima facie case that the adverse party must prove in order to acquire title by adverse possession. 2013 VT 100A, ¶¶ 35-37.

¶ 10. Against this backdrop, the trial court cited the California Court of Appeal's ruling in *Lowe* for the proposition that "[t]he general rule is that the statute of limitations can be tolled by filing, within the [statutory period], an action contesting the right to the property." 44 Cal. Rptr. 2d at 787; see also 3 Am. Jur. 2d *Adverse Possession* § 101 ("An adverse possession can be interrupted by the owner filing suit, or bringing an action seeking to establish title to the property which conflicts with the title claimed by the adverse claimant . . . ."). The action interrupts the

continuity element of adverse possession, thus defeating an adverse possessor's endeavor to acquire title. *Id.* The trial court further held, in accordance with *Lowe*, 44 Cal. Rptr. 2d at 789, that this rule "applies equally to claims brought by either side."

¶ 11. ■ As an initial matter, we cannot agree with the Court of Appeal that claims brought by either the adverse possessor or the title owner have equal impact on tolling the statute. Instead, we conclude that only claims to possession by the title owner and against the adverse possessor will toll the statute of limitations. A contrary rule would be inconsistent with the nature of adverse possession claims. As we explained in *Roy*, title from adverse possession arises not from filing suit, but rather from occupying the land in a manner consistent with ownership. Logically, then, the "period of limitations on actions to quiet title [must] run[ ] *against the record owner* of the land. The adverse possessor is under no duty to quiet title by judicial action, nor to vigorously assert [her] right at every opportunity." *Carnevale v. Dupee*, 783 A.2d 404, 412 (R.I. 2001) (quotation omitted).

¶ 12. ■ The *Lowe* court cites no case law to support its contrary conclusion, see 44 Cal. Rptr. 2d at 789; by contrast, the weight of authority from other jurisdictions supports the understanding that, once the adverse party has given notice to the title owner through her occupancy consistent with adverse possession, it is the title owner's burden to assert her right to the disputed property. See, e.g., 3 Am. Jur. 2d *Adverse Possession* § 6 ("An adverse possession statute creates a period of limitations on an action to quiet title that runs only against the record owner of the land; the adverse possessor is under no duty to quiet title by judicial action nor to vigorously assert his or her right at every opportunity." (citing *Carnevale*, 783 A.2d at 404)); 2 C.J.S. *Adverse Possession* § 175 ("Generally, an interference constituting an interruption [of continuity] must be physical, or by suit, or by unequivocal acts of ownership . . . ."); see also *Tungsten Holdings, Inc. v. Parker*, 2001 MT 117, ¶ 21, 27 P.3d 429 (stating "the rule that the [statutory limitations] period is tolled during the pendency of an action seeking to establish title to the property *which conflicts with the title claimed by the adverse claimant*" (emphasis added)); *Chapin v. Letcher*, 93 N.W.2d 415, 423 (N.D. 1958) ("An action by the claimant of adverse possession does not dispute his own possession. It is only when his claim is disputed by someone

else that the statute is suspended."); *Flagg v. Faudree*, 2012 OK Civ. App. 4, ¶ 14, 269 P.3d 45 ("[A]dverse possession is not interrupted by giving notice to an occupant that true title is in someone else unless the landowner, or someone in his behalf, acts overtly to oust the adverse claimant." (quotation omitted)).

¶ 13. Defendant's case law citations do not bear on this distinction between title owners and adverse possessors for tolling purposes, and are thus unavailing. See, e.g., *Snook v. Bowers*, 12 P.3d 771, 782 (Alaska 2000) (addressing effects of prior litigation between title owners of land on their respective claims without addressing distinction between title owners and adverse parties for purposes of statute of limitations); *Baird & Warner, Inc. v. Addison Indus. Park, Inc.*, 387 N.E.2d 831, 845 (Ill. App. Ct. 1979) (analogizing to adverse possession claims, among others, for purposes of determining whether a lawsuit tolled statute of limitations for contractual claims); *Cumberland Farms, Inc. v. Mayo Corp.*, 694 A.2d 752 (R.I. 1997) (involving suit by title owner).

¶ 14. ■ Defendant argues, however, that even if the statute was not tolled by plaintiffs' suit to quiet title, it *was* tolled by defendant's motion to dismiss in January 2008, which affirmatively asserted defendant's claim to the disputed property. Therefore, plaintiffs' period of adverse possession falls short of the fifteen-year period of limitations. The general rule is that either "an answer by the defendant disputing the plaintiff's title" or a "counterclaim challenging the title of the plaintiff and making a claim of ownership of the property in the defendant" in response to an adverse possessor's suit to quiet title will toll the statute, effective on the date the answer or counterclaim was filed. 3 Am. Jur. 2d *Adverse Possession* § 101; see also *Chapin*, 93 N.W.2d at 423 (stating same).

¶ 15. ■ ■ Defendant's argument on this point is persuasive. Although defendant asserted its claim of ownership in a motion to dismiss, not in an answer or a counterclaim, we conclude that defendant's motion provided adequate notice of its claim to title and thus constituted an "unequivocal act[ ] of ownership" sufficient to toll the statute of limitations. A more exacting distinction would not accord with Vermont's extremely liberal notice-pleading standard, which requires the court to take as true all of the alleged facts in a cause of action. See *Bock v. Gold*, 2008 VT 81, ¶ 4, 184

Vt. 575, 959 A.2d 990 (mem.) ("[T]he threshold a plaintiff must cross in order to meet our notice-pleading standard is exceedingly low."); see also V.R.C.P. 8 (describing notice pleading). Although the pleading at issue here is a motion to dismiss rather than a complaint, the principle that "the rules do not require a specific and detailed statement of the facts which constitute a cause of action, but simply a statement clear enough to give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests," applies equally to defendant's claim to title ownership of the disputed property here. Reporter's Notes, V.R.C.P. 8 (quotation omitted). Therefore, a legal claim to ownership by a title owner, whether in a motion to dismiss, answer, or counterclaim, suffices to toll the statute so long as the pleading provides adequate notice of the owner's claim to the adverse party under Civil Rule 8.

¶ 16. ■ Accordingly, we hold that defendant's motion to dismiss provided adequate notice of his claim to ownership and thus tolled the statute beginning in January 2008, before the statute of limitations had run. Therefore, we affirm the trial court's ruling that plaintiffs did not fulfill the requirements of adverse possession, albeit with slightly different reasoning.[2]

## II.

¶ 17. Finally, we address plaintiffs' claims that the trial court erred in its fact finding regarding whether plaintiffs' predecessors acquired the property through acquiescence, and that the trial court erred in its calculations of the period of adverse possession and acquiescence before and after Camp Tara's ownership.[3] Claims of acquiescence, like adverse possession claims, involve "mixed question[s] of law and fact." See *First Congregational Church of Enosburg v. Manley*, 2008 VT 9, ¶ 12, 183 Vt. 574, 946 A.2d 830 (mem.). Regarding these claims, "[t]his Court views the factual findings of the trial court in the light most favorable to the

---

[2] Plaintiffs' argument that 12 V.S.A. § 462's charitable-use exemption does not apply to acquiescence claims is foreclosed by our decision in *Roy*, which holds that the exemption applies equally to acquiescence and adverse possession claims. 2013 VT 100A, ¶¶ 60-61.

[3] We need not address plaintiffs' argument that the date found by the court for the alleged grant of permission was erroneous because we hold that the motion to dismiss, which was filed prior to the alleged permission, tolled the statute of limitations in any event.

prevailing party below, not setting aside findings unless they are clearly erroneous. In contrast, our review of the trial court's conclusions of law is plenary." *Id.* (citation omitted); see also *Okemo Mountain*, 2005 VT 55, ¶ 13 (stating that, in acquiescence claims, review of trial court's legal conclusions is "nondeferential and plenary" and that conclusions involving fact finding will be upheld if "supported by findings that are, in turn, supported by the evidence").

¶ 18. ▆▆ ▆▆ Viewing the facts in the light most favorable to the prevailing party, we cannot say that the trial court's factual findings here were clearly erroneous as to either of plaintiffs' arguments. As to plaintiffs' first claim, the trial court found that a barbed-wire fence, probably used for grazing, followed the surveyed boundary line along almost the entire length of the Tara property before ending at the location of a fallen pine tree. There was no evidence that the wire protruded anywhere on the beach. Based on this evidence, the trial court concluded that it was impossible to "infer anything of substance about the use of the two properties prior to 1949." The trial court's conclusion is supported by the record, as there was little evidence regarding the purpose of the fence or the understanding between plaintiffs' predecessors and their adjacent neighbors as to the boundary. Plaintiffs' claim that the long-time placement of a "private beach" sign along the disputed area supports their predecessors' understanding of the boundary line is unavailing, as the sign appears to reflect only on the property's usage during plaintiffs' ownership post-1949. Plaintiffs also point to a 1976 deed from their predecessors to plaintiffs' parents describing the disputed area as part of plaintiffs' property, but this deed is insufficient in itself to show that Camp Tara's predecessor acquiesced in this understanding of the boundary line. Although plaintiffs' evidence could have supported a contrary ruling by the trial court, our deferential standard of review requires us not to "disturb the trial court's findings of fact unless they are clearly erroneous, despite inconsistencies or substantial evidence to the contrary." *First Congregational Church*, 2008 VT 9, ¶ 7. Despite the inconsistent evidence in this case, we cannot find the trial court's findings to be clearly erroneous.

¶ 19. ▆▆ We find similarly unavailing plaintiffs' argument that the trial court miscalculated the time period of VCC's charitable

use. The trial court found that the charitable exemption under § 462 began on February 21, 1958, when VCC took title for the purpose of starting Camp Tara, and ended on March 18, 2004, when Camp Tara was dissolved by the Vermont Secretary of State. Thus, the exemption applied during the entire period of ownership by VCC. Plaintiffs contend that the property was only used for a charitable purpose when it was actually operated as a summer camp from July 5, 1959 until August 2, 2003. Although the actual use of the property as a summer camp only occurred during summer months between 1959[4] and 2003, it is equally clear, as the trial court found, that "the use of [the] property for charitable purposes occurred during the off-season as well as the summer camping season." The mere fact that it took VCC several months after it obtained title to get Camp Tara up and running and several months after the camp closed to dissolve the Camp Tara corporation does not take away from the dedication of the land to the charitable purpose of the summer camp during those periods of time. Contrary to plaintiffs' argument, this conclusion is consistent with our prior decision in this matter that "the focus of the [charitable] exemption is not on lands *held* by a public pious or charitable user . . . but rather on 'lands given, granted, sequestered or appropriated to a public, pious or charitable *use.*'" *Mahoney*, 2011 VT 3, ¶ 10 (quoting 12 V.S.A. § 462). VCC's only use of the property during its years of ownership was as a charitable summer camp, and thus the land was "appropriated to a . . . charitable use" during the entirety of its ownership. 12 V.S.A. § 462.

*Affirmed.*

---

[4] Plaintiffs concede that Camp Tara was open for one month during the summer of 1958, and that the articles of association filed on behalf of Camp Tara and a press release issued to announce the camp's formation in 1958 stated the nonprofit corporation's intent to provide a summer camp for needy children of all races and creeds.