NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2019 VT 49

No. 2018-169

| | |
|---|---|
| Dawn Boynton | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Rutland Unit, |
| | Civil Division |
| | |
| ClearChoiceMD, MSO, LLC and | January Term, 2019 |
| ClearChoiceMD, PLLC | |

Samuel Hoar, Jr., J.

James G. Levins of Tepper Dardeck Levins & Fitzsimons, LLP, Rutland, for
 Plaintiff-Appellant.

Kerin E. Stackpole of Paul Frank + Collins P.C., Burlington, for Defendants-Appellees.


PRESENT: Skoglund, Robinson, Eaton and Carroll, JJ., and Pearson, Supr. J. (Ret),
        Specially Assigned


¶ 1.    **CARROLL, J.**    Plaintiff appeals the trial court's dismissal of her wrongful-termination complaint against her former employer. In her amended complaint, plaintiff alleges that she was terminated from her employment as a medical assistant at defendants' medical office in Rutland in September 2017 in violation of the covenant of good faith and fair dealing and contrary to whistleblower protections.[1] We affirm.

---

[1] The dissenters each acknowledge that this case has presented a challenge to decipher the claims that have been alleged, both in the pleadings themselves and on appeal. Post, ¶ 16 (Robinson, J., dissenting) ("Plaintiff's legal arguments traversed a range of legal theories, but her complaint actually only raised two . . . ."); post, ¶ 38 n. 11 (Pearson, J., dissenting) ("The somewhat confusing pleadings, and briefing and argument both below and in this Court, appear to have

¶ 2.     Plaintiff worked as a medical assistant at defendants' clinic. During a shift in July 2017, plaintiff and other employees were attending to a patient in mental distress. She alleges that a senior staff member, a physician assistant named J.S., told the distraught patient to be quiet. The patient left the office, stating that he would walk into oncoming traffic. Plaintiff followed the patient outside and calmed him down. An ambulance was called to take the patient to the hospital. According to the amended complaint, after the patient departed in the ambulance, J.S. commented that "it would have been better to let [the patient] get hit by traffic." Plaintiff was upset by this comment and reported it to the general manager of the clinic. Defendants terminated her employment the following month, explaining that she had violated company policy by smoking just outside the facility entrance. Plaintiff denies that she was smoking outside the premises. She claims that she was actually terminated in retaliation for reporting J.S.'s comment and that her termination violated public policy and the covenant of good faith and fair dealing implied in her contract of employment.[2]

¶ 3.     Defendants moved to dismiss plaintiff's amended complaint pursuant to Vermont Rule of Civil Procedure 12(b)(6), arguing that, because plaintiff was an at-will employee and the parties had not formed a contractual relationship, the claim of a breach of the covenant of good faith and fair dealing was not available to her. In addition, defendants argue that it was not a violation of public policy to terminate plaintiff because the comment made by J.S., which plaintiff reported, did not affect patient safety or care.

_____

allowed [the theory that plaintiff has asserted a stand-alone claim of a violation of public policy] to take on a life of its own."). However, as we explain below, even if we were to understand this case to present each of the claims, as construed by the dissenters, plaintiff still would be unable to state any claim for relief based upon the facts and circumstances she has alleged in the amended complaint.

[2] As explained below, we hold that even if defendants indeed terminated plaintiff on account of her report of her co-worker's comment, doing so was neither against public policy nor in violation of the handbook. Thus, it is immaterial to the whistleblower claim whether the reason that defendants stated for her dismissal could be substantiated or was pretextual.

2

¶ 4.     The trial court granted defendants' motion to dismiss.  The court found that the employee handbook was unambiguous and established an at-will employment relationship that was fatal to plaintiff's claim of a violation of the covenant of good faith and fair dealing.  The court also rejected plaintiff's assertion that defendants violated public policy by terminating her because she qualified as a "whistleblower" under the terms of the handbook, concluding that neither the handbook nor the whistleblower statute covered the conduct she reported.  This appeal followed.

¶ 5.     We review the trial court's dismissal of the amended complaint without deference. Bock v. Gold, 2008 VT 81, ¶ 4, 184 Vt. 575, 959 A.2d 990 (mem.).  A court cannot grant a motion to dismiss for failure to state a claim "unless it appears beyond doubt that there exist no circumstances or facts which the plaintiff could prove about the claim made in [plaintiff's] complaint which would entitle [plaintiff] to relief."  Gilman v. Me. Mut. Fire Ins., 2003 VT 55, ¶ 14, 175 Vt. 554, 830 A.2d 71 (mem.) (quotation omitted).  We accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from those facts.  Id.

¶ 6.     We first consider plaintiff's claim that defendants breached the implied covenant of good faith and fair dealing by terminating her without good cause and by falsely stating that she was being discharged for failure to comply with the smoking policy.  Plaintiff appears to have conceded on appeal that she was defendants' at-will employee despite alleging otherwise in the complaint.  She has not argued on appeal that the handbook created an express or implied contractual modification to her at-will employment arrangement.[3]  "It is axiomatic that an at-will

---

[3]  We respectfully disagree with Judge Pearson's assertion that plaintiff has asserted a breach-of-contract claim.  Post, ¶ 38.  Plaintiff has never alleged in the complaint, the amended complaint, or her appellate brief that defendants are in breach of contract.  However, even if we were to construe the complaint as asserting a claim sounded in contract based on the handbook's anti-retaliation provision, plaintiff still could not state a cognizable claim because the facts and all reasonable inferences drawn therefrom do not demonstrate that the handbook protections were violated.  This is because plaintiff's report did not concern conduct that endangered patient safety.

employee may be discharged at any time with or without cause, unless there is a clear and compelling public policy against the reason advanced for the discharge, or unless the at-will relationship has been modified." Ross v. Times Mirror, Inc., 164 Vt. 13, 23, 665 A.2d 580, 586 (1995) (quotation and emphasis omitted). For this reason, we have "decline[d] to recognize the implied covenant of good faith and fair dealing as means of recovery where the employment relationship is unmodified and at-will and the employee is challenging the dismissal based on a right to tenure." Id.; see also LoPresti v. Rutland Reg'l Health Servs., Inc., 2004 VT 105, ¶ 39, 177 Vt. 316, 865 A.2d 1102 ("[T]he covenant does not apply to at-will employment agreements when the plaintiff's argument amounts to no more than an objection to the other party's freedom to avail itself of the at-will arrangement by terminating the agreement for reasons that the other party does not accept."). Because plaintiff was an at-will employee and she has admitted on appeal that the handbook does not modify her status as an at-will employee, her argument that defendants violated the covenant of good faith and fair dealing by terminating her for a pretextual reason fails. Defendants' decision to do so was squarely within their prerogative.[4]

---

[4] We note, as does Justice Robinson in dissent, that we have previously looked favorably on out-of-state cases holding that a claim under the covenant of good faith and fair dealing can be cognizable where an employer terminates an at-will employee to avoid paying a commission that will soon be contractually owed. LoPresti, 2004 VT 105, ¶ 42 (explaining covenant claim not necessarily precluded "when a plaintiff's claim for damages is based on 'accrued benefits' and not solely on implied tenure" (citing Fortune v. Nat'l Cash Register Co., 364 N.E.2d 1251, 1255-57 (Mass. 1977)); post, ¶ 26. Whether we formally adopt the nonpayment-of-accrued-benefits doctrine is a question for another day. Here, however, we reaffirm the principle that an employee cannot state a claim that is effectively for wrongful termination, whether framed as a breach-of-contract claim or as a violation of the covenant, where the plaintiff is an at-will employee and the employment arrangement has not been modified. LoPresti, 2004 VT 105, ¶ 39; Ross, 164 Vt. at 23, 665 A.2d at 586. Such an employee, it has been long held, can be terminated for any reason or for no reason. Sherman v. Rutland Hosp., Inc., 146 Vt. 204, 207, 500 A.2d 230, 232 (1985) (collecting cases).

Judge Pearson argues in dissent that this opinion could serve as a "green light to all employers that any truly at-will employee can be fired for a completely false, i.e., pretextual, reason." Post, ¶ 34. This does not concern us. Pretextual termination of an at-will employee is not illegal unless the underlying reason for termination violates the law—that is, it violates a constitutional or statutory right, public policy, or a contractual arrangement. See Foote v.

¶ 7.    We turn next to plaintiff's claim that her termination violated public policy.  In support of this claim, she alleged that the professional guidelines governing physician assistants require them to treat all persons equally, to provide compassionate and effective care to patients, and to report illegal or unethical conduct by health-care professionals.  She also alleged that the code of ethics applicable to medical assistants required her to "[r]ender service with full respect for the dignity of humanity; [u]phold the honor and high principles of the profession and accept its disciplines; [and] [s]eek to continually improve the knowledge and skills of medical assistants for the benefit of patients and professional colleagues."  Plaintiff alleged that these provisions are evidence of a public policy encouraging health-care workers to report conduct that is harmful to patient care and that her termination for reporting J.S.'s comment violated this policy.

¶ 8.    An at-will employee may not be terminated for reasons that violate "a clear and compelling public policy."  Payne v. Rozendaal, 147 Vt. 488, 492, 520 A.2d 586, 588 (1986) (defining public policy in employment context as "the community common sense and common conscience, extended and applied throughout the state to matters of public morals, public heath, public safety, public welfare, and the like" (quotation omitted)).  Whether an activity violates public policy is a question of law.  Madden v. Omega Optical, Inc., 165 Vt. 306, 314 n.3, 683 A.2d 386, 391 n.3 (1996).  This Court has recognized that "public policy in the employment context may be found in sources other than statutes and constitutions," such as professional ethical codes.  LoPresti, 2004 VT 105, ¶ 22.  However, "employees who invoke such codes . . . still bear the burden of demonstrating that such codes are clear and compelling in their mandates to employees

_____

Simmonds Precision Prods. Co., 158 Vt. 566, 570-71, 613 A.2d 1277, 1279 (1992) (enumerating exceptions to at-will doctrine).  Judge Pearson does not claim otherwise.  Rather, he explains that the "only inquiry" under the covenant claim here is "whether defendants exacerbated their breach of contractual promise."  Post, ¶ 40.  This presupposes that there is a cognizable claim, contractual or not, under the handbook.  We conclude, as explained, ante, ¶ 11, that there is no such claim under the handbook.  If a cause of action exists against an employer for the use of a pretextual reason to terminate an at-will employment where the purportedly true reason for termination is not illegal, neither the plaintiff nor the dissenters have identified it.

5

who claim that their professional ethical obligations supersede those owed to their employers." Id. ¶ 23 (quotation omitted). An employee seeking to invoke the public-policy exception to at-will employment must demonstrate that her employer's conduct was " 'cruel or shocking to the average [person's] conception of justice.' " Payne, 147 Vt. at 493, 520 A.2d at 589 (quoting Pittsburgh, Cincinnati, Chi. & St. Louis Ry. v. Kinney, 115 N.E. 505, 507 (Ohio 1916)).

¶ 9. Accepting as true plaintiff's allegation that she was fired for reporting J.S.'s comment, the code provisions cited in plaintiff's complaint are too vague to support "an objective, good faith belief" that the comment violated an ethical rule or was conduct that plaintiff was obligated to report. LoPresti, 2004 VT 105, ¶ 23. Even if we were to interpret the quoted provisions as requiring plaintiff to report actions by medical providers that are harmful to patient care, such a requirement would be inapplicable here because J.S. made the comment at issue after the patient left the premises. Therefore, the comment—about what should have happened to a patient in the past—did not negatively affect patient care. See id. ¶ 24 ("[A] professional employee must show that the specific provisions contained in the ethical code relied upon apply in the particular professional context in which the employee is working.").

¶ 10. Tellingly, plaintiff does not make any allegations in the amended complaint that J.S.'s comments caused harm to patients. Rather, the complaint asserts that "[t]he termination violates public policy which encourages workers to report [i]ncidents which are harmful to patient care." There is no allegation that this incident was indeed harmful, or that it would cause harm in the future. And, although the complaint asserts that plaintiff's termination caused her "anxiety and stress, worry about finances, [and] loss of sense of achievement and association with coworkers," it does not allege that plaintiff reasonably believed that J.S.'s comments caused harm in the past or would cause harm in the future to patients.[5] Moreover, plaintiff's moral objection to

---

[5] Justice Robinson in dissent focuses on the potential for harm to be exacted on future patients resulting from J.S.'s comment. We note that the cases cited within that dissent regarding

6

the alleged comment is insufficient to state a claim that her report was protected by public policy.

See id. ¶ 23 ("To succeed, an employee cannot rely on his or her personal moral beliefs, or on an

overly cautious reading of the mandates in a particular code."). The allegations in the complaint

---

whistleblower protections for reports about medical-personnel misconduct all involve current or past harm to patient care. Post, ¶ 28 n. 9 (citing Thomas v. Med. Ctr. Physicians, P.A., 61 P.3d 557, 565 (Idaho 2002) (holding public policy prohibits termination for whistleblower's report of doctor's performance of unnecessary operations for financial gain and falsification of medical records); Shores v. Senior Manor Nursing Ctr., Inc., 518 N.E.2d 471, 474 (Ill. App. Ct. 1988) (concluding whistleblower claim for violation of public policy was cognizable for report that nurse was endangering patient's health and welfare); Blackburn v. Am. Dental Ctrs., 2014-Ohio-5329, ¶ 28, 22 N.E.3d 1149 (Ct. App.) (finding public-policy whistleblower protection for reports of substandard care)). However, here plaintiff admits that the comment by J.S. did not impact the level of care rendered to any patient. The dissent does not cite and we have not found any cases affording public-policy whistleblower protections to a report about medical treatment where no harm to patient care has occurred. Cf. Conrad v. Bd. of Johnson Cty. Comm'rs, 237 F. Supp. 2d 1204, 1267 (D. Kan. 2002) (holding that nurse's vocal disagreement with patient's treatment plan was "properly characterized" as a workplace dispute, not protected activity); Turner v. Mem'l Med. Ctr., 911 N.E.2d 369, 378 (Ill. 2009) (affirming dismissal of whistleblower complaint alleging public-policy protection for reports of tardy charting by providers); Wright v. Shriners Hosp. for Crippled Children, 589 N.E.2d 1241, 1244 (Mass. 1992) (explaining that termination of nurse's employment in reprisal for criticisms of quality of patient care would not have violated public-policy whistleblower exception to at-will employment).

However, we do not quarrel with the concept that a report of conduct—even conduct in the form of commentary alone—that portends future harm to patient care could potentially be protected under a public-policy whistleblower rationale. Rather, we respectfully disagree that the interpretations proposed by the dissent give rise to a triable issue here. The dissent argues that it is reasonable to construe J.S.'s comment as indicative of a misunderstanding by J.S. of the standard of care for physician assistants or as an instruction to a subordinate about how to administer future care. According to the dissent, a jury should decide whether either of these interpretations is appropriate. Post, ¶¶ 29-30. However, according to the complaint, J.S.'s statement, that "it would have been better to let [the patient] get hit by traffic" was about an event that had already occurred involving one particular patient. It was made after that patient was no longer present. There is simply no reasonable interpretation of this comment as a demonstration that J.S. misunderstood his duty of care to future patients, or that he intended to direct his subordinate to act in conformity with the statement in the future. As noted, we do not foreclose the possibility that under other circumstances the termination of an at-will employee who has reported a medical provider's comment could give rise to a cognizable whistleblower claim founded in contract, public policy, or statute. See 21 V.S.A. § 507 (providing whistleblower protections to hospital and nursing home workers). However, it is not reasonable to interpret the statement alleged here as causing current or future harm to patients. This is fatal to plaintiff's whistleblower claim.

7

do not demonstrate that defendants' conduct was "cruel or shocking to the average [person's] conception of justice." Payne, 147 Vt. at 493, 520 A.2d at 589 (quotation omitted).

¶ 11. Plaintiff also argues that her claim is supported by the anti-retaliation policy, the "whistleblower policy," contained in defendants' employee handbook, which, according to the amended complaint, states that defendants "will not tolerate action against an employee who: . . . [m]ake[s] a good faith report of a violation that endangers the health or safety of an employee, patient, client or customer, environment or general public." Assuming that this employee handbook can be a source of anti-retaliation protection, plaintiff has failed to demonstrate that she is entitled to protection under the quoted provision because J.S.'s alleged comment cannot reasonably be viewed as having endangered anyone's health or safety given the timing of the statement. Nor, as noted above, did plaintiff make such an allegation in her complaint. Plaintiff therefore cannot state a claim grounded in the facts and allegations of the complaint that defendants violated the handbook's whistleblower provision, which protects an employee who, in good faith, reports threats to patient safety.[6]

_____

[6] We respectfully disagree with Judge Pearson that the focus of this case "should only be on whether plaintiff believed in good faith that she could (if not should) safely report the remark by J.S. because it presented an issue of legitimate concern that needed the company's attention." Post, ¶ 38 n. 13. That is not what the handbook protects; rather, the handbook provides protection for reports of conduct endangering patient safety. And, as plaintiff has admitted on appeal, a "good-faith" report would require plaintiff to show both (1) that she believed J.S.'s alleged comment threatened future patient health or safety (which has not been alleged here), and (2) that a reasonable person in plaintiff's position would have believed the comment threatened patient safety (which cannot be shown under the alleged facts). See Wichita Cty. Tex. v. Hart, 917 S.W.2d 779, 784-85 (Tex. 1996) (defining whistleblower "good faith" under state law to include two elements: "(1) the employee [subjectively] believed that the conduct reported was a violation of law and (2) the employee's belief was [objectively] reasonable in light of the employee's training and experience"); cf. Nielsen v. AECOM Tech. Corp., 762 F.3d 214, 222-23 (2d Cir. 2014) (affirming dismissal of whistleblower claim for failure to allege facts supporting reporter's objectively reasonable belief that reported conduct violated federal law). Because the facts in the complaint are not susceptible to a reasonable construction that J.S.'s comment endangered any patient, plaintiff cannot state a claim upon which relief can be granted. And, contrary to Judge Pearson's assertion that this case should focus exclusively on whether plaintiff believed J.S.'s comment "needed the company's attention," we hold that the subjective prong of the good-faith analysis is of no consequence to the resolution of this case.

¶ 12.    We conclude that plaintiff has not stated a claim for a violation of a clear and compelling public policy. Dulude v. Fletcher Allen Health Care, Inc., 174 Vt. 74, 82, 807 A.2d 390, 397 (2002) (affirming summary judgment in favor of employer where plaintiff failed to show that termination was "so contrary to society's concern for providing equity and justice that there is a clear and compelling public policy against it"). Nor has she stated a claim under the handbook's whistleblower policy. The trial court therefore properly dismissed this claim as well.

Affirmed.

FOR THE COURT:

_____

Associate Justice

¶ 13.    **ROBINSON, J., dissenting.**    I conclude that the allegations in plaintiff's complaint, and the fair inferences from those allegations, are sufficient to survive a motion to dismiss with respect to plaintiff's claims that defendants breached the covenant of good faith and fair dealing and wrongfully terminated her in violation of public policy. First, I believe the framework applied by the majority—based on its understanding that plaintiff has not argued that her at-will status has been modified to any degree—overlooks that plaintiff's claim based on the implied covenant of good faith and fair dealing arises from defendants' alleged violation of a specific no-retaliation provision in the handbook. Second, given the standards applicable at this stage of litigation, I believe the complaint alleges sufficient facts to support plaintiff's claims based on retaliatory discharge under a theory based on public policy. Because I conclude that the allegations, considered in their proper light, could support the claims that plaintiff has made, I would deny the motion to dismiss and remand for further proceedings. Accordingly, I respectfully dissent.

¶ 14. The posture of this case is critical to my analysis. Given the liberal notice-pleading standard in effect, as well as the standards for evaluating a motion to dismiss, we should be particularly careful in characterizing plaintiff's claims in any light other than that most favorable to her. Vermont has an "extremely liberal" notice-pleading standard. Mahoney v. Tara, LLC, 2014 VT 90, ¶ 15, 197 Vt. 412, 107 A.3d 887. A complaint need be nothing more than "a bare bones statement that merely provides the defendant with notice of the claims against it." Colby v. Umbrella, Inc., 2008 VT 20, ¶ 13, 184 Vt. 1, 955 A.2d 1082. The requirement that a complaint provide "fair notice of what the plaintiff's claim is and the grounds on which it rests" does not require plaintiffs to produce evidence supporting their claims, or even to provide a detailed description of the evidence that would support those claims. Reporter's Notes, V.R.C.P. 8 (quotation omitted). The complaint's "purpose is to initiate the cause of action, not prove the merits of the plaintiff's case." Colby, 2008 VT 20, ¶ 13. It is only upon a motion for summary judgment that the court considers the record to determine whether "the materials cited . . . establish the absence or presence of a genuine dispute" and entitle one party to judgment as a matter of law. V.R.C.P. 56(c)(1)(A)-(B); see also V.R.C.P. 56(a).

¶ 15. In evaluating a motion to dismiss, the court must "assume that all factual allegations pleaded in the complaint are true, accept as true all reasonable inferences that may be derived from plaintiff's pleadings, and assume that all contravening assertions in defendant's pleadings are false." Mahoney v. Tara, LLC, 2011 VT 3, ¶ 7, 189 Vt. 557, 15 A.3d 122 (mem.) (quotation omitted). Accordingly, a motion to dismiss should not be granted "unless it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." Id. (quotation omitted). Given this "low threshold for withstanding a 12(b)(6) motion to dismiss," Colby, 2008 VT 20, ¶ 8, a "motion to dismiss for failure to state a claim is not favored and rarely granted." Gilman v. Me. Mut. Fire Ins. Co., 2003 VT 55, ¶ 14, 175 Vt. 554, 830 A.2d 71 (mem.).

¶ 16.   Plaintiff's legal arguments traversed a range of legal theories, but her complaint actually only raised two:   First, plaintiff contended that defendants, through the employee handbook, specifically promised employees that if they made good-faith reports within certain parameters, they would not be subject to adverse employment action in retaliation.  By terminating her in retaliation for good-faith reports, contrary to the assurance in the employee handbook that such actions would be protected, defendants breached the implied obligation of good faith and fair dealing.  Second, plaintiff contended that because her termination was in retaliation for her report concerning patient safety, she was wrongfully terminated in violation of public policy.  I part ways with the majority on both counts.

## I.  Plaintiff's Narrow Breach-of-Implied-Covenant Claim

¶ 17.   Although plaintiff does not challenge generally that she is an "at-will" employee who can be terminated for any reason or no reason at all, she does contend that the employee handbook contains a specific promise that she will not suffer adverse employment action— including termination—in retaliation for certain protected reports.  In her view, this promise acts as a narrow limitation on defendants' otherwise unfettered right to terminate her for any reason. My understanding of plaintiff's claims, rather than any significant divergence in our understanding of the law, is what seems to separate me from the majority.  Given my understanding of plaintiff's claims, I conclude that because plaintiff's contractual expectations include freedom from certain acts of retaliation, her claim falls within the covenant of good faith and fair dealing—even though her termination for other reasons, or no reason at all, would not necessarily be actionable.

## A.  Plaintiff's Claim

¶ 18.   We have repeatedly recognized that an employee handbook can modify the expectations of otherwise at-will employment.  Consistent with this case law, plaintiff makes a claim for breach of the covenant of good faith and fair dealing that is anchored in a specific promise in the employee handbook—namely, the promise that her employer will not tolerate any adverse

11

employment action against an employee who, in good faith, reports a violation that endangers health or safety. To the extent that the majority infers that plaintiff concedes that she is an at-will employee and that status is unmodified in any way by the promises in the employee handbook, I do not believe that understanding is consistent with plaintiff's actual claims.

¶ 19. We have recognized that an employer may unilaterally assume legal obligations through its written policies, including through its employee handbook. Dillon v. Champion Jogbra, Inc., 175 Vt. 1, 5, 819 A.2d 703, 707 (2002). For example, where an employment contract says that employment is at will, if the employer's handbook limits or defines the circumstances in which an employee will be terminated, this can modify the employee's at-will status. Id. at 7, 819 A.2d at 707; see also Ross v. Times Mirror, Inc., 164 Vt. 13, 20, 665 A.2d 580, 584 (1995) (noting that whether statements in employee handbooks are "binding agreements" depends on whether statements are "definitive in form, communicated to the employees, and demonstrate an objective manifestation of the employer's intent to bind itself"). We have explained that we recognize handbook provisions as potentially altering the employment agreement because when an employee handbook tells employees they enjoy a protection, and the company receives the benefits of heightened morale that such protections can bring, the company "should not then be able to disregard its commitments at random." Dillon, 175 Vt. at 5, 819 A.2d at 706.[7]

_____

[7] Moreover, we have explained that if the handbook terms are clear, their interpretation is a matter for the court; otherwise, their interpretation should be left to the jury. Id. at 6-7, 819 A.2d at 707-08; see also Cate v. City of Burlington, 2013 VT 64, ¶ 15, 194 Vt. 265, 79 A.3d 854 (explaining that if terms of employment contract, as laid out in employee manual, are ambiguous, their interpretation is mixed question of fact and law). Dismissal of plaintiff's breach-of-the-no-retaliation-agreement claim at the motion-to-dismiss stage is only appropriate if the alleged handbook provisions could not possibly support plaintiff's claim that defendants promised not to take retaliatory and adverse employment actions against employees making certain kinds of reports. Although I perceive the handbook no-retaliation promise as "definitive in form, communicated to the employees, and demonstrat[ing] an objective manifestation of the employer's intent to bind itself," my analysis does not require this conclusion. Ross, 164 Vt. at 20, 665 A.2d at 584. If there is any ambiguity on this question, plaintiff is entitled to develop her case past the dismissal stage.

¶ 20. Tapping into this case law, plaintiff quotes the handbook's Anti-Retaliation and Whistleblower Policy at length in her amended complaint, specifically noting both the assurance that employer will not tolerate any adverse action against an employee for making "a good faith report of a violation that endangers the health or safety of an employee, patient, client or customer, environment or general public" and the statement that an employee who takes such adverse action "will be subject to discipline up to and including termination." She specifically alleges that "[d]efendant's employee handbook creates an implied contract of employment." These allegations give notice of her claim that the terms of the employee handbook had become part of her employment contract, creating an expectation that she would not be subjected to retaliatory discharge—even if she was otherwise subject to termination at will.

¶ 21. Significantly, plaintiff is not making a claim that the employee handbook upended her presumptive at-will status by requiring that she be terminated only for cause, or for specified causes, or by establishing pre-termination procedural protections, such as progressive discipline, that defendants did not follow. She claims no legal expectation of continued employment or of any particular process prior to her termination. Instead, she contends only that, while she can be terminated without process and without cause, she cannot be terminated in retaliation for a report that is specifically protected by a nonretaliation provision in the contract. Although she has acknowledged that she is an "at-will employee" generally subject to termination without cause or process, she has never suggested that she has no contractual rights arising from the employee handbook, or that her at-will status negates defendants' specific, enforceable promises to her.

¶ 22. Given the above, I do not join in the majority's description that plaintiff has not argued on appeal that the handbook created an express or implied contractual modification to her at-will employment arrangement, ante, ¶ 6, and I do not see this as a case in which "the plaintiff is an at-will employee and the employment arrangement has not been modified." Ante, ¶ 6 n.4. I understand plaintiff's acknowledgment that she was "at-will" to indicate that she is not contending

13

that the employer has generally modified her "at-will" status by establishing a progressive discipline process or promising to limit termination of her employment to good cause. I do not understand the concession that she can generally be terminated for any reason or no reason at all as a disavowal of her core claim that by its promises in the employee handbook, defendants conferred on plaintiff a right, enforceable in contract, to be free from adverse employment actions, including termination, in retaliation for certain reports.

B. Covenant of Good Faith and Fair Dealing

¶ 23. Because plaintiff's terms of employment create a contractual expectation that she will not be subject to certain retaliatory acts, defendants' actions in contravention of that assurance violate the covenant of good faith and fair dealing.

¶ 24. The covenant of good faith and fair dealing is implied in all contracts. Carmichael v. Adirondack Bottled Gas Corp. of Vt., 161 Vt. 200, 208, 635 A.2d 1211, 1216 (1993) ("[A] covenant of good faith is implied in every contract. . . ."). It is intended to ensure both parties' " 'faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.' " Id. (quoting Restatement (Second) of Contracts § 205 cmt. a (1981)).

¶ 25. Whether a party to a contract acted "with faithfulness to an agreed common purpose and consistency with the justified expectations of the other party" is determined by the expectations that the contract created. Id. (quotation omitted). Because at-will employment contracts may create the expectation that the employer does not need a good reason, or any reason at all, to fire the employee, termination of an at-will employee without reason can be consistent with the parties' justified expectations. LoPresti v. Rutland Reg'l Health Servs., Inc., 2004 VT 105, ¶ 40, 177 Vt. 316, 865 A.2d 1102. For that reason, the covenant of good faith and fair dealing does not generally support a cause of action arising from the termination of an at-will employee.

¶ 26. But violation of a justified expectation arising from an employment contract may breach the covenant of good faith and fair dealing. This Court recognized in LoPresti that even

14

though the covenant does not protect an at-will employee's interest in continued employment per se, an employer's termination of an at-will employee may breach the covenant by frustrating other justifiable expectations under the contract. Id. ¶ 42. For example, in a decision that this Court cited approvingly in LoPresti, the Massachusetts Supreme Judicial Court held that a jury could conclude that an employer had breached the covenant when, simply to avoid paying a larger commission, it terminated an at-will commissioned sales agent who had secured a large sale and would be entitled to a larger commission at closing—defying his justified expectations that he would receive the commission for his sale. Id. (citing Fortune v. Nat'l Cash Register Co., 364 N.E.2d 1251, 1257 (1977)).

¶ 27.     Plaintiff has made out a claim for breach of the implied covenant of good faith and fair dealing. She has sufficiently alleged that the terms of defendants' employee handbook were part of her employment contract. Dillon, 175 Vt. at 5, 819 A.2d at 707 (holding employer may unilaterally assume contractual obligations through its written policies, including through its employee handbook). She has consistently argued that these handbook provisions are enforceable against defendants. Plaintiff has also sufficiently alleged that the handbook's Anti-Retaliation and Whistleblower Policy created a justified expectation that she would not face retaliation, including termination, for whistleblowing. In making this case, she points to handbook provisions assuring that defendants would "not tolerate action against an employee who" made "a good faith report of a violation that endangers the health or safety of a . . . patient," and stating that the policy was "designed to protect employees," defining "retaliation" as including "termination." And plaintiff has sufficiently alleged that defendants defied the justified expectations created by their Anti-

15

Retaliation and Whistleblower Policy by retaliating against her for whistleblowing, thereby breaching the implied covenant of good faith and fair dealing.[8]

## II. Public-Policy Argument

¶ 28. The majority's focus on the harm caused to the patient about whom J.S. made the comment that triggered plaintiff's report fails to afford plaintiff the inferences to which she is entitled at this stage of the litigation. Plaintiff's allegations are sufficient to support an inference that J.S.'s comment posed a danger to patients and the public, and thus to support both the handbook-based contract claim discussed above and the public-policy-based wrongful-termination claim.[9]

¶ 29. Plaintiff could well have concluded in good faith that J.S.'s comment was not necessarily just a harsh and inappropriate insult to the patient at issue, but that it reflected a dangerous understanding of appropriate practices for treating patients in mental-health crisis. The

---

[8] The analysis below concerning the public-policy argument applies as well to the question of whether plaintiff has alleged sufficient facts to show that the allegedly retaliatory termination undermined her reasonable expectations under the terms of the contract.

[9] I war more with the majority's assessment of the facts than its description of the general legal standards governing public-policy-based wrongful-termination claims. See ante, ¶ 11. I note, however, that protection of whistleblowers in the medical context, in connection with reports of conduct that puts patients' health and safety at risk, is a particularly clear and compelling public policy. "[C]ompelling public policy is intended to prevent injuries to the public—especially in matters of public health." LoPresti, 2004 VT 105, ¶ 20. Courts have, for this reason, found that public policy prohibits the termination of whistleblowers in the medical context. See Thomas v. Med. Ctr. Physicians, P.A., 61 P.3d 557, 565 (Idaho 2002) (reversing grant of summary judgment to employer on wrongful-termination claim, holding public policy prohibited termination of employee for reporting doctor's misconduct, which included performance of unnecessary operations for financial gain and falsification of medical records); Blackburn v. Am. Dental Ctrs., 2014-Ohio-5329, ¶ 28, 22 N.E.3d 1149 (Ct. App.) (reversing in part grant of summary judgment to employer on claims for wrongful discharge in violation of public policy where "the materials submitted by appellants, if believed, make it clear that their terminations were in direct response to appellants' attempts to warn their employer about the grossly substandard care provided by Dr. Allen to . . . patients"); Shores v. Senior Manor Nursing Ctr., Inc., 518 N.E.2d 471, 474 (Ill. App. Ct. 1988) (reversing grant of motion to dismiss claim of retaliatory discharge in violation of public policy where plaintiff, a nurse's assistant, alleged she was terminated for reporting to nursing-home management that full-time charge nurse was endangering residents' health and welfare).

allegation at the core of this case is that plaintiff reported to the general manager that J.S., a physician assistant and senior staff member at the clinic, said that instead of preventing a mentally ill patient in distress from running into traffic, "it would have been better to let him get hit by traffic." In other words, plaintiff reported that a senior medical provider told his subordinate that it would have been better to allow the patient to self-harm or potentially kill himself than to calm him down and assist him in receiving treatment, as she had done. Plaintiff—and a jury—could have inferred from this statement that J.S.'s understanding of his own standard of care as a physician assistant is dangerously misguided and poses a danger to the health and safety of defendants' patients. Moreover, his statement that "it would have been better to let him get hit by traffic" could also be taken as an instruction, by a senior medical provider to his subordinate, to allow patients in crisis to self-harm or engage in dangerous behavior. Such an instruction clearly endangers the health and safety of defendants' patients. As plaintiff argues, this raises serious concerns as to "what will happen with the next client" in a similar position, and "how . . . that attitude [will] impact the care of mental-health patients." As she pointed out, "[i]t can reasonably be inferred that [J.S.'s] words were an accurate representation of his thoughts, and that his actions would conform to his words" and that "it should also be assumed that he expected staff working under him to act in accordance with his words the next time they were faced with a similar situation." She argued this could reasonably be expected to "result in severe harm to the next mental health patient voicing a desire to end his life." For this reason, I believe the majority's focus only on the danger the comment caused to the previous patient is misplaced. Plaintiff's report, taken at face value and affording plaintiff the inferences to which she is entitled, falls into the category of good-faith reports of a violation endangering the health or safety of patients—both for the purposes of the employee-handbook claim and the public-policy claim.

¶ 30. A factfinder might ultimately conclude that J.S. made the comment at issue, but was simply blowing off steam. It might determine that a reasonable person hearing his comment

17

would have understood that he was not in any way endorsing or counseling neglect of patients in mental-health crisis. A factfinder might be confident that J.S.'s comments did not reflect his actual approach to care for patients in mental-health crisis, and did not signal that he posed a danger to such patients. But at the initial pleading stage, this Court should not adopt the understanding of J.S.'s alleged comments most favorable to defendant.

¶ 31. The more concerning understanding of J.S.'s alleged comment—that he advocated leaving patients in mental-health crises to their own devices without regard to the danger to themselves or others and expected his subordinates to follow his counsel in that regard—would clearly reflect a danger to the health or safety of patients and the public for the purposes of plaintiff's contract claim. And defendants' allegedly retaliatory termination of plaintiff raises serious public-policy concerns because it sends a chilling message to all of defendants' other employees: Don't report dangers to patient welfare and safety, because you will be fired. See Diego v. Pilgrim United Church of Christ, 180 Cal. Rptr. 3d 359, 367 (Ct. App. 2014) (recognizing "that terminating a perceived whistleblower will discourage employees from reporting" and "the result has a tendency to be injurious to the public" (quotation omitted)).

¶ 32. For the above reasons, I would reverse the trial court's dismissal of this case.

_____
Associate Justice

¶ 33. **PEARSON, Supr. J. (Ret.), Specially Assigned, dissenting.** I agree with almost all of what Justice Robinson has written as to why the dismissal of the amended complaint, as a matter of law under Vermont Rule of Civil Procedure 12(b)(6), was premature at this early stage of the litigation. I write separately to emphasize the narrow claims actually made by plaintiff, and also because I believe that (a) it is unnecessary to analyze her public-policy assertions to determine whether those allegations alone state a cause of action, and (b) it is unnecessary for plaintiff to

18

ultimately prove that the physician assistant's remark presented any <u>actual</u> risk of harm (whether present or future) to defendants' patient clientele.

¶ 34. Both the majority, see <u>ante</u>, ¶ 10 & n.5, and Justice Robinson in her dissent, see <u>ante</u>, ¶¶ 28-31, in my view go beyond the specific claims in the amended complaint to address the merits of those latter two issues. That discussion in turn sets the stage for what I believe is the most concerning aspect of the majority opinion: its potential green light to all employers that any truly at-will employee can be fired for a completely false, i.e., pretextual, reason,[10] even after the majority initially states the point is "immaterial." <u>Ante</u>, ¶ 2 n.2; see also <u>ante</u>, ¶ 6 (holding "terminating [plaintiff] for a pretextual reason . . . was squarely within [defendants'] prerogative"). It is one thing to let an employee go for "any reason or for no reason," <u>ante</u>, ¶ 6 n.4, which I agree is the essence of at-will employment; it is something else entirely to do so based on a wholly made-up reason. Appearing to grant such permission to employers is a step I believe the Court need not take to decide this case.

¶ 35. The claims actually set forth in the amended complaint are as follows:

Count One<br>Violation of Whistleblower Protection

45. The termination violates public policy which encourages workers to report [i]ncidents which are harmful to patient care.

46. The termination violates the Anti-Retaliation and Whistleblower Policy established in [defendants'] Employee Handbook.

Count Two<br>Violation of Covenant of Good Faith and Fair Dealing

. . . .

50. The employment relationship requires [defendants] to treat [plaintiff] fairly and in good faith.

---

[10] Again, at this juncture on a motion to dismiss under Rule 12(b)(6), plaintiff's allegations that the reason for her firing was false and pretextual, and that she was really let go because she reported the remark made by J.S., must be accepted as true.

19

51. [Defendants] violated that obligation when [they] falsely accused [plaintiff] of smoking outside the patient entrance on September 10, 2017, and fired her for reporting unethical conduct by her superior, J.S. in violation of [defendants'] Anti-Retaliation and Whistleblower Policy.

¶ 36. As confirmed at oral argument, plaintiff does not make any claim generally to modification of her at-will employment status such that all of the progressive discipline procedures set out in the employee handbook would be enforceable against defendants in all circumstances. Rather, as Count One expressly states, she is suing only on the unilateral promise clearly made in the Anti-Retaliation and Whistleblower Policy section of the handbook. For the reasons articulated by Justice Robinson, that particular claim should survive Rule 12(b)(6) dismissal because this specific section is not just "entirely hortatory and conditional" (as characterized by the trial court), but rather sets out an unambiguous "policy . . . designed to protect employees and address [defendants'] commitment to integrity and ethical behavior" pursuant to which [defendants] "will not tolerate action against an employee who . . . [m]ake[s] . . . a good faith report of a violation that endangers the health or safety of . . . [a] patient, client, or customer."

¶ 37. This handbook section goes on to define the "adverse employment action" that defendants would not tolerate in such circumstances to include termination. The handbook section's unilateral promise created a limited, but still enforceable, agreement that modified plaintiff's overall at-will status, and a justifiable expectation of employment protection in the circumstances covered by that part of the handbook. Thus, the trial court was mistaken in beginning its discussion with the premise that "Plaintiff does not assert a breach of contract [claim]." She did, albeit limited only to the Anti-Retaliation and Whistleblower Policy section of the handbook. See supra, ¶ 35 (quoting Count One). Unfortunately, the majority adopts and repeats that (in my view) erroneous characterization of the case, that is, that plaintiff has not claimed or argued for any implied modification of her otherwise at-will employment status. See ante, ¶ 6.

20

¶ 38. Nor does plaintiff in her amended complaint make any general assertion of termination in violation of public policy as a stand-alone claim.[11] In my view public policy is implicated in Count One, see supra, ¶ 35 (quoting amended complaint), only insofar as it provides the context for why plaintiff's reporting of the comment made by J.S. is entitled to the whistleblower protection outlined in that handbook section. Justice Robinson's dissent cogently explains why the statement by J.S. does implicate public policy as well as the concern for "integrity and ethical behavior" expressed in the Anti-Retaliation and Whistleblower Policy section of the handbook, sufficient to trigger that section's protection.[12] That is because the real issue is not treatment of the actual patient who fortunately suffered no actual harm, but rather the risk of possible mistreatment of future patients suggested by the comment (even if it was just a flip or cavalier remark made in frustration with a difficult patient). Taking plaintiff's allegations as true and construing them in her favor, she reported the statement in good faith,[13] and was nonetheless

---

[11] The somewhat confusing pleadings, and briefing and argument both below and in this Court, appear to have allowed this theory to take on a life of its own. Under our liberal notice-pleading standards, our obligation to "do substantial justice," and the standard applicable under Rule 12(b)(6), plaintiff's amended complaint should be construed in her favor to determine whether any viable claim is stated, and nonviable or inartful allegations ignored. See V.R.C.P. 8(a), (e)(1), (f); cf., e.g., Mahoney v. Tara, LLC, 2011 VT 3, ¶ 12, 189 Vt. 557, 15 A.3d 122 (mem.) ("The key to whether a complaint is sufficient is notice; the complaint must provide a statement clear enough to give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests." (quotation omitted)); Hislop v. Duff, 146 Vt. 310, 314, 502 A.2d 357, 359 (1985) (requiring that improperly designated assertions be recharacterized to implement claimant's intent).

[12] I do part ways with Justice Robinson on whether the remark by J.S. could be construed as a direction to subordinates to act in accordance with his "instruction." Ante, ¶ 29. Even if plaintiff's counsel urged that interpretation on appeal, the Court need not address it if it does not facilitate disposition of the case. But including the point then leads to engagement with the majority over what plaintiff must prove about the actual meaning of the remark by J.S., an issue that (again) I believe is unnecessary to address here. See ante, ¶ 10 n.5.

[13] In my view, plaintiff would not need to actually prove that in fact "J.S. misunderstood his duty of care to future patients, or that he intended to direct his subordinate to act in conformity with the statement in the future," as the majority suggests. See ante, ¶ 10 n.5. Rather, under the paradigm set up by the whistleblower-protection clause in the handbook, the focus should only be on whether plaintiff believed in good faith that she could (if not should) safely report the remark

21

subjected to the very type of adverse employment consequence defendants expressly promised they would not "tolerate."

¶ 39. As for Count Two—the claim for breach of the implied covenant of good faith and fair dealing—as a matter of logic and basic contract law I agree with Justice Robinson that an at-will employment relationship is still a contractual relationship by which both parties mutually agree to the "freedom" to end their relationship, and it is therefore subject (as are all contracts and agreements) to the implied covenant. But I also understand the apprehension by the majority, and in the case law, that generally recognizing such a theory of relief in employment cases could lead to the tail wagging the dog, that is, that such a cause of action could quickly become (to mix metaphors) the backdoor through which the primary rule of at-will employment is effectively undermined by a right to litigate issues of good faith and fair dealing in every employment termination.

¶ 40. The limited nature of the claim actually asserted here does not require that this tension be resolved in this case. Plaintiff adds this theory of relief only to buttress, and specifically links it to, the narrowly drawn cause of action based solely on the whistleblower-protection clause of the handbook. In other words, the only inquiry would be whether defendants exacerbated their breach of their promise not to tolerate any retaliation against good-faith whistleblowers by also falsely alleging plaintiff was fired because she purportedly violated the company's no smoking policy, thereby trying to camouflage their breach of the anti-retaliation provision. Count Two merely enhances and amplifies Count One. But plaintiff could still prevail under Count One and,

_____

by J.S. because it presented an issue of legitimate concern that needed the company's attention. Defendants (after internal review) might then decide that the statement warranted no further action by the company because patient safety was not in fact "endanger[ed]," but plaintiff should not be punished for bringing it to her employer's attention. I see no configuration of the case that would make what J.S. actually meant or intended an issue for jury determination (or a material element for purposes of summary judgment).

if successful, recover damages and other relief ordinarily available for wrongful termination, without necessarily proving her claim under Count Two.

¶ 41.   Again, plaintiff does not claim in Count Two that the covenant was violated simply by terminating her for a pretextual reason, but rather that defendants violated the covenant by using that false reason for her firing to cover up and mask its violation of the anti-retaliation provisions in the Handbook. See supra, ¶ 35 (quoting the amended complaint).  If the good-faith-and-fair-dealing claim is construed in this more narrow way and limited only to the alleged facts of this particular case, it would be unnecessary to make the broader pronouncement that pretextual firings are an employer's "prerogative," which I fear could be taken as appearing to grant permission to all employers of truly at-will employees to engage in intentionally deceitful conduct.

¶ 42.   For these reasons I too would reverse the judgment of dismissal below.

_____

Superior Judge (Ret.), Specially Assigned

23